Sebastian A. MATCZAK, Plaintiff,

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE, Defendant.**

No. 68–C–396.

United States District Court
E. D. New York.

May 8, 1969.

David B. Lubash, Jamaica, N. Y., for plaintiff; Jerrold Cohen, Jamaica, N. Y., of counsel.

Joseph P. Hoey, U. S. Atty., Eastern District of New York, for defendant; Cyril Hyman, Asst. U. S. Atty., of counsel.

BARTELS, District Judge.

The Secretary of Health, Education, and Welfare (Secretary), defendant, has decided that the services of plaintiff, an ordained clergyman and a teacher of philosophy and religion at St. John's University, were rendered in the exercise of his ministry and therefore his remuneration was not wages within the meaning of and not covered by the Social Security Act (Act), except as self-employment income. Accordingly, plaintiff brings this action under Section 205(g) of the Act, 42 U.S.C.A. § 405(g), to review the final decision of the Secretary, and the defendant in turn moves for summary judgment pursuant to Rule 56, Fed.Rules Civ.Proc., 28 U.S.C.A.

Plaintiff was ordained in the Roman Catholic Church in Warsaw, Poland in 1942, arrived in the United States in 1954, and was hired in September, 1957 by St. John's University to assume the position of associate professor of theology and philosophy. His qualifications for the position include, *inter alia,* masters degrees in theology, world history and philosophy and doctorate degrees in theology and philosophy, all earned in Europe prior to his arrival in this country. From 1957–1964 St. John's University treated plaintiff as an employee for Social Security purposes and paid the employer's share of the tax on his earnings. According to a letter written by Blaise J. Opulente, Executive Vice President of the University, St. John's is an educational institution, chartered under the Education Law of the State of New York. It also is a Catholic University and has been entrusted to the Congregation of the Mission, a Catholic religious community of priests, more popularly known as the Vincentian Fathers, and is governed by a Board of Trustees composed of Vincentian priests and laymen. Although most of its students are Catholic, the University has enrolled many non-Catholics and there are many non-Catholics on its faculty and staff. Reverend Matczak is not a member of the Congregation of the Mission, although he is a Catholic priest and at times functions elsewhere in that capacity. Even in the Department of Theology of the University, ordination to the priesthood is not a prerequisite to appointment and, in fact, there are members of that Department who are laymen. In his letter Mr. Opulente stated that St. John's University is not an integral part of the Brooklyn Diocese of the Roman Catholic Church and that plaintiff's employment by St. John's University as a member of its faculty should be distinguished from

his functions and duties as a Catholic priest.

On March 8, 1966, plaintiff was advised by the Administration that the wages reported for him by St. John's University from January 1, 1961 through June 30, 1964, could not remain credited to his account because the work he performed was in the exercise of his ministry and therefore excepted from employment under the Act, § 210(a) (8) (A), 42 U.S.C.A. § 410(a) (8) (A). On the basis of the waiver certificate, filed on March 31, 1965, plaintiff was credited with self-employment income for 1962 and subsequent years under the Internal Revenue Code, but not for 1961 since he failed to file timely self-employment returns for that year.

## I

The pertinent provisions of the Act relevant to the issues here involved are as follows:

Section 209, defining the term "wages" as meaning remuneration for employment.

Section 210(a), defining the term "employment" as any service, of whatever nature, performed by an employee for the person employing him.

Section 210(a) (8) (A), excluding from the term "employment" service "performed by a duly ordained, commissioned, or licensed minister of a church in the exercise of his ministry or by a member of a religious order in the exercise of duties required by such order".

Section 211(c) (4), excluding from the term "trade or business", when used with reference to self-employment income or net earnings from self-employment, the "performance of service by a duly ordained, commissioned, or licensed minister of a church in the exercise of his ministry or by a member of a religious order in the exercise of duties required by such order".

Section 1402(e) of Title 26, Internal Revenue Code of 1954, providing that the earnings of a minister excluded from the term "trade or business" in the above sections may be included as self-employment income if the minister files a waiver certificate to include such earnings.[1]

In the administration of the above sections of the Act, the Secretary promulgated Section 404.1015 of Regulation No. 4, as appears from Section 404.1015 of the Code of Federal Regulations, which describes services deemed performed by a minister or priest "in the exercise of his ministry, or by a member of a religious order in the exercise of duties required by such order". Subsection (a)[2] states in general that services performed by a minister or a member of a religious order are excepted from employment, and subsection (b)[3] specifical-

[1] Subsequent to the Secretary's determination, § 211(c) of the Act and § 1402(e) of the Internal Revenue Code of 1954 were amended. Section 211(c) by Pub.L. 90–248, Title I, § 115(a), 81 Stat. 839 (January 2, 1968), and § 1402(e) by Pub. L. 90–248, 81 Stat. 821, § 115(b) (2) (January 2, 1968) to bring it into harmony with the amended § 211(c). The cumulative effect of these two amendments is to treat earnings of an ordained, commissioned, or licensed minister in the exercise of his ministry as income from a trade or business and included in self-employment income unless the individual files a request that it not be so treated. Prior to these amendments, such earnings were excluded from self-employment income unless the individual filed a request for their inclusion.

[2] Subsection (a):

"(a) *In general.* Services performed by a duly ordained, commissioned, or licensed minister of a church in the exercise of his ministry, or by a member of a religious order in the exercise of duties required by such order, are excepted from employment. * * * *"

[3] Subsection (b):

"(b) *Service by a minister in the exercise of his ministry.* Except as provided in paragraph (c) (2) of this section, service performed by a minister in the exercise of his ministry includes the ministration of sacerdotal functions and the conduct of religious worship, and the control, conduct, and maintenance of religious organizations (including the religious boards, societies, and other integral

ly includes in that exception services performed in "the conduct of religious worship, and the control, conduct, and maintenance of religious organizations (including the religious boards, societies, and *other integral agencies* of such organizations), under the authority of a religious body constituting a church or church denomination." (Emphasis added.) In determining whether services performed by a minister are performed in the exercise of his ministry, paragraph (2) of subsection (b) includes: "Service performed by a minister in the control, conduct, and maintenance of a religious organization relates to directing, managing, or promoting the activities of such organization." Paragraph (4) of subsection (b) includes ministerial services performed in the control, conduct, and maintenance of such organization "which is operated as an *integral agency* of a religious organization" (emphasis added). Paragraph (5) of subsection (b) includes as ministerial services, services of a minister pursuant to an *assignment* "for an organization which is neither a religious organization nor operated as an integral agency of a religious organization * * * even though such service may not involve the conduct of religious worship or the ministration of sacerdotal functions."

After a hearing at the request of the plaintiff, the hearing examiner reached the following conclusions:

"4. St. John's University is an educational institution chartered under the educational laws of the State of New York and is not an *integral part* of the Brooklyn Diocese of the Roman Catholic Church and the claimant is not a member of the Congregation of the Mission; and as a member of the faculty of St. John's University the claimant was employed as a teacher and as a professor and not as a minister." (Emphasis added.)

"7. Reverend Matczak was employed by St. John's University from 1957 up until the present time as a teacher and professor and the earnings he has received from St. John's University are 'wages' within the meaning of the Social Security Act, as amended."

Upon its own motion, the Appeals Council reversed the hearing examiner's decision, stating that it did not adopt the inferences, findings and conclusions of the hearing examiner, although nothing new was added to the record at the hearing before it.

## II

■■ Section 205(g) [4] of the Act expressly provides that this Court shall

---

agencies of such organizations), under the authority of a religious body constituting a church or church denomination. * * * *"

4. Section 205(g) :
" * * * The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Secretary or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a party to the hearing before the Secretary, because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed under subsection (a) of this section, the court shall review only the question of conformity with such regulations and the validity of such regulations. * * * *"

There are two types of administrative regulations, (a) legally binding regulations and (b) interpretative regulations. The former has the authority of a statute, but the latter is subject to challenge and will be rejected if it is deemed to be "in conflict with a clear and unambiguous statute". American President Lines, Ltd. v. Federal Maritime Commission, 114 U.S. App.D.C. 418, 316 F.2d 419 (1963); American Telephone and Telegraph Co. v. United States, 299 U.S. 232, 57 S.Ct. 170, 81 L.Ed. 142 (1936). The administrative regulations of the Social Security Act fall within the second category and while entitled to great weight, are not controlling. Kandelin v. Social Security Board, 136 F.2d 327, 147 A.L.R. 596 (2d Cir. 1943).

have power to review the findings of the Secretary to ascertain if they are "supported by substantial evidence" and also to review the validity of regulations prescribed under the Act. Upon this motion the Court must determine whether the reversal of the hearing examiner's decision by the Appeals Council was supported by substantial evidence, and also whether the controlling regulations are valid. Two important facts emerge from the background of this case, (i) the absence of any evidentiary basis for the Appeals Council's reversal of the hearing examiner's decision, and (ii) the absence of clarity in administrative regulation, Section 404.1015(b).

■■ As to the first deficiency, it is quite clear that the only evidence as to whether St. John's University is or is not an integral part of a religious organization, is a letter from the Executive Vice President of the University, dated November 18, 1966, to the effect that the University "is not an integral part of the Brooklyn Diocese of the Roman Catholic Church." Without more, it does not seem to this Court that the Appeals Council had substantial evidence justifying a reversal of the hearing examiner and reaching an opposite conclusion. This is not to say that evidence cannot be produced to show that the Board of Trustees, composed of Vincentian priests and laymen, is an integral part of a religious organization. It does mean that no evidence was adduced to that effect either on the record before the hearing examiner or before the Appeals Council and that the latter's reversal was based upon a factual assumption. For this reason alone the matter must be remanded for evidence upon this question.

As to the second deficiency, none of the illustrations or paradigms in the pertinent regulations specifically cover plaintiff's activities, unless they come within Section 404.1015(b) (5) with respect to non-ministerial duties of a minister assigned by a religious body to perform the same. There is no evidence that plaintiff was assigned or designated by a religious body to perform the serv-

ices in question but, on the contrary, the evidence indicates that he voluntarily performed those services as a free contracting agent, and accordingly there is no necessity for the Court to pass upon the validity of this regulation as far as it is interpreted to cover non-assigned ministers. The basis for the Appeals Council's ruling was that plaintiff was rendering services for an organization "operated as an *integral agency*" of a church denomination. (Emphasis added.) The viability of the regulation employing this phrase is open to serious question because ambiguity arises as to the meaning of "an integral agency" of a religious organization under the authority of a religious body constituting a church or church denomination. Under this wording it is necessary to ascertain not only whether a religious organization is under the "authority" of a religious body constituting a church, but also whether the organization for which a minister performs the services is "an integral agency" of the religious organization. The word "integral" as employed in the regulation has a nebulous and amorphous meaning. Its connotations, as applied to the facts of this case, are imprecise, vague and obscure.

In ordinary usage "integral" means a part or constituent component necessary or essential to complete the whole (Webster's International Dictionary (2d ed.). Does the use of this word in this regulation mean that the particular agency of a religious organization must be a necessary and essential part of a religious body constituting a church or church denomination? If so, does the Appeals Council's ruling mean that St. John's University is an essential and necessary component of the Catholic Church or its subdivisions? No evidence has been produced to that effect. If, however, the word "integral" is construed by the Secretary to mean "a connection or association with" a church or church denomination, then one is faced with the question whether the definition is being stretched beyond the point authorized by the words of the statute and the intent

of Congress. Without knowing exactly what the regulation means by the employment of the word "integral", it is clear upon this review that there has been no showing to what extent, if any, St. John's University was an integral part of the Catholic Church or its subdivisions.

■■ In determining whether Reverend Matczak is entitled to his Social Security protection, reliance must be, in the first instance, upon the wording of the statute. It excepts nothing more than service performed by a duly ordained minister in the exercise of his ministry or by a member of a religious order in the exercise of duties required by such order. These words cannot be extended by a regulation to services outside of these two categories. Upon a rehearing of this matter, if it is to be meaningful, it is suggested that a more specific explanation be prescribed by the Secretary as to what constitutes an *integral* agency of a religious organization and that the basis upon which the Secretary has decided that St. John's University is such an *integral* agency of the Catholic Church or a subdivision thereof be clearly demonstrated.

The case is hereby remanded for findings consistent with this opinion. This is an order.