452 So.2d 65 (1984)
STATE of Florida, DEPARTMENT OF BUSINESS REGULATION, DIVISION OF ALCOHOLIC BEVERAGES AND TOBACCO, Appellant,
v.
SALVATION LIMITED, INC., Appellee.
Nos. AO-246, AQ-336.
District Court of Appeal of Florida, First District.
May 22, 1984.
*66 James N. Watson, Jr., Staff Atty., Tallahassee, for appellant.
No brief filed for appellee.
NIMMONS, Judge.
The Division of Alcoholic Beverages and Tobacco ("DABT") appeals from a final order of a hearing officer of the Division of Administrative Hearings entered pursuant to Section 120.56, Florida Statutes, declaring Fla. Admin. Code Rule 7A-3.15(3)(d)[1] to be an invalid exercise of delegated legislative authority. We affirm the order of the hearing officer.
Chapter 565, Florida Statutes, limits the number of liquor licenses to be issued in Florida. However, certain businesses and enterprises are exempt from such limitations if they meet the criteria of Section 561.20(2)(a)3., Florida Statutes (1981), which provides in pertinent part:
(2)(a) No such limitation of the number of licenses as herein provided shall henceforth prohibit the issuance of a special license to:
* * * * * *
3. Any restaurant having 2,500 square feet of service area and equipped to serve 150 persons full-course meals at tables at one time, and deriving at least 51 percent of its gross revenue from the sale of food and nonalcoholic beverages... .
Rule 7A-3.15(3) contains criteria which DABT uses to determine whether a special restaurant licensee is operating a bona fide restaurant within the meaning of Section 561.20(2)(a), supra. In order to qualify as such under the Rule, the meals must be prepared and cooked on the premises.
It is axiomatic that an administrative rule cannot enlarge, modify or contravene the provisions of a statute. Seitz v. Duval County School Board, 366 So.2d 119, 121 (Fla. 1st DCA 1979); State Department of Health and Rehabilitative Services v. McTigue, 387 So.2d 454 (Fla. 1st DCA 1980). A rule which purports to do so constitutes an invalid exercise of delegated legislative authority. Nicholas v. Wainwright, 152 So.2d 458, 460 (Fla. 1963).
DABT's general rule-making power stems from Section 561.11:
(1) The division shall have full power and authority to make, adopt, amend, or repeal rules, regulations, or administrative orders to carry out the purposes of the Beverage Law... .
Through Section 561.20(2)(a)3., the legislature has enumerated specific criteria for a special restaurant beverage license. The applicant or licensee must: (1) be a restaurant, (2) have 2,500 square feet of service area, (3) be equipped to serve 150 persons full-course meals at tables at one time, and (4) derive at least 51 percent of its gross revenue from the sale of food and nonalcoholic beverages. To these fixed and definite criteria, DABT added, by rule, a fifth criterion: that the meals be prepared and cooked on the licensed premises. In so doing, it enlarged upon the statutory criteria and, thus, exceeded the "yardstick" laid down by the legislature. See 4245 Corporation v. Division of Beverage, 371 So.2d 1032 (Fla. 1st DCA 1978); State Department *67 of Health and Rehabilitative Services v. McTigue, supra.
The above statute does not define the terms "restaurant" or "serve." They should, therefore, be given their plain and ordinary meaning. Smith v. State, 80 Fla. 315, 85 So. 911 (1920); McTigue, supra. "Restaurant" is defined as "a public eating place." Webster's New Collegiate Dictionary, p. 979 (1979). To "serve" means "to help persons to food: as (a): to wait at table; (b): to set out portions of food or drink." Id. at 1051. These terms are clear and unambiguous. The serving of food by a restaurant simply does not require that the food be prepared and cooked on the premises. If the legislature had intended to impose such a requirement, it could easily have done so.
DABT contends that any reference in the laws of Florida to the term "restaurant" should be construed to mean a "public food service establishment" elsewhere defined in the statutes. But even if DABT is correct that those terms are equivalent, such is unavailing to DABT in view of the statutory definition of "public food service establishment." Section 509.013(5)(a), Florida Statutes (1981), provides:
(5)(a) "Public food service establishment" means any building, vehicle, place, or structure, or any room or division in a building, vehicle, place, or structure, that is maintained and operated as a place where food is regularly prepared, served, or sold for immediate consumption on or in the vicinity of the premises; to be called for or taken out by customers; or to be delivered to factories, construction camps, airlines, and other similar locations for consumption at any place. "Public food service establishment" includes any public location with vending machines dispensing prepared meals. (emphasis supplied)
In its brief, DABT erroneously[2] quotes the statutory definition of "public food service establishment" by substituting the conjunctive "and" for the disjunctive "or" in the statutory phrase "where food is regularly prepared, served, or sold." Obviously, the correct statutory definition quoted above, which is in the disjunctive, is erosive rather than supportive of DABT's position.
Finally, it has not been shown that rejection of DABT's contention  that Section 561.20(2)(a)3. supports a requirement that meals be prepared and cooked on the premises  will defeat the purpose or intent of the Florida Beverage Law or will have bizarre consequences. Compare State Department of Health and Rehabilitative Services v. Framat Realty, Inc., 407 So.2d 238, 242 (Fla. 1st DCA 1981); Florida Commission on Human Relations v. Human Development Center, 413 So.2d 1251 (Fla. 1st DCA 1982). In Department of Business Regulation, Division of Beverage v. Huddle, Inc., 342 So.2d 140, 142 (Fla. 1st DCA 1977), this court said:
It has always been the legislative intent that a special restaurant license under Section 561.20(2) was available only when there was a bona fide substantial restaurant operation primarily engaged in the service of food and nonalcoholic beverages. It was never to be a subterfuge for the operation of a bar or cocktail lounge with only incidental sales of food.[3]
It has not been shown that off-premises preparation and cooking of food conflicts or is inconsistent with this legislative intent.
DABT argues that Huddle held the subject rule was reasonable and consistent with the statute. But the Huddle court specifically addressed and upheld only the rule's requirement that a minimum percentage of gross revenues be derived from the sale of food and nonalcoholic beverages. Its holding cannot be broadened to include other aspects of the rule which were not subjected to judicial scrutiny.
AFFIRMED.
THOMPSON and BARFIELD, JJ., concur.
NOTES
[1] The subject rule provides, in pertinent part:

"(3) The following criteria will be used in determining whether or not the holder of a specified restaurant license is a bona fide restaurant.
* * * * * *
(d) The business is advertised and held out to the public to be a place where meals are prepared and served, space being provided with adequate kitchen and dining room equipment and having employed such number and kinds of employees for preparing, cooking and serving meals for guests; the primary operation of such restaurant shall be for the preparation, cooking and serving of meals and not for the sale of alcoholic beverages." (emphasis supplied)
[2] We are confident the error was inadvertent.
[3] The court held only that the restaurant must be primarily engaged in the service of food, not the preparation, cooking, and service of food.