# FLORIDA ASSOCIATION OF ACADEMIC NONPUBLIC SCHOOLS, et al. v DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES

## Case No. 86-2272R

State of Florida, Division of Administrative Hearings

October 3, 1986

### APPEARANCES OF COUNSEL

**Dexter Douglas** and **Sherry Spiers** for petitioners Florida Association of Academic Nonpublic Schools, Jacksonville Country Day School, and The Cushman School.

**Harold D. Smith** for petitioner Florida Association of Academic Nonpublic Schools.

**B. Elaine New** for respondent Department of Health and Rehabilitative Services.

### OPINION

LINDA M. RIGOT, Hearing Officer.

### FINAL ORDER

Pursuant to Notice, this cause was heard by Linda M. Rigot, the assigned Hearing Officer of the Division of Administrative Hearings, on August 14 and 15, 1986, in Tallahassee, Florida.

Respondent Department of Health and Rehabilitative Services published an amendment to rule 10M-12.001, *Florida Administrative Code*, on June 6, 1986, in the *Florida Administrative Weekly*. Champer 10M-12, *Florida Administrative Code*, provides the standards for licensing of child care facilities. The proposed amendment relates to the statutory exemption of schools from child care facility licensing laws. The Petitioners filed a Petition to Determine Invalidity of a Proposed Rule n June 17, 1986, and an Amended Petition to Determine Invalidity of Proposed Rule on June 18, 1986. Accordingly, the issue for determination herein is whether proposed rule 10M-12.001 is an invalid exercise of delegated legislative authority.

Petitioners presented the testimony of Howard G. Burke; Thomas A. Horkan, Jr.; Joan Drody Lutton; Patricia Cantieri, and by way of deposition Jasper Lawrence Pintacuda. Respondent presented the testimony of Jasper Lawrence Pintacuda, Pamela C. Phelps, Pamela Hutchinson, Bess Lander Bell, Allen Wankat, and Patterson Lamb. Additionally, Petitioners' Exhibits numbered 3 and 4 and Respondent's Exhibits numbered 1 and 3-6 were admitted in evidence.

Both parties submitted posthearing proposed findings of fact, memoranda of law, and written closing arguments. Respondent's Motion to Strike Petitioners' posthearing pleadings for late filing was granted by Order dated September 26, 1986. Respondent's proposed findings of fact numbered 2, 3, 6, 8, and 9 have been adopted in substance. The remainder of Respondent's proposed findings of fact have been rejected as follows: numbers 1, 13, 14, 18, 19, 23-25, and 27-30 as not being supported by competent, substantial evidence and numbers 4, 5, 7, 10-12, 15, 17, 20-22, and 26 as being immaterial to the issue in this cause.

### FINDINGS OF FACT

1. Chapter 402, *Florida Statutes*, provides for licensing of child care facilities by the Department of Health and Rehabilitative Services (hereinafter "HRS"). It mandates minimum standards for personnel, physical facilities, sanitation and safety, nutritional practices, admissions and record keeping, transportation safety, child discipline, and plans of activities. Section 402.306, *Florida Statutes*, allows counties whose licensing standards meet or exceed state minimum standards to

perform child care facility licensing in that county rather than HRS performing that activity.

2. Chapter 402, *Florida Statutes*, was originally enacted in 1974 to provide minimum standards for the growing number of commercial day care facilities. In the definitional section of that Chapter, the legislature specifically defined a child care facility and further specified those programs and facilities exempted from the child care facility licensing laws. Section 402.302(4), *Florida Statutes*, provided as follows:

> "Child care facility" includes any child care center or child care arrangement which provides child care for more than five children unrelated to the operator and which receives a payment, fee, or grant for any of the children receiving care, wherever operated, and whether or not operated for profit. *The following are not included: public schools and nonpublic schools which are in compliance with the Compulsory School Attendance Law, chapter 232*; summer camps having children in full-time residence; summer day camps; and Bible Schools normally conducted during vacation periods. [Emphasis supplied.]

3. Due to extensive publicity involving certain abuse incidents by personnel at child care facilities and public opinion, the child care facility licensing laws were revisited in 1984. In a special session, the Legislature strengthened some requirements of Chapter 402 and provided for screening and background checks of personnel in child care facilities and for reasonable parental access to children in those facilities. Chapter 84-551, *Laws of Florida.*

4. Due to the insistence of HRS and certain counties performing their own child care facility licensing that pre-kindergarten programs in school required those schools to obtain licensure as child care facilities, Chapter 402 was further amended in 1985 to clarify the exclusion of schools. As amended, the statutory definition of child care facility now provides:

> "Child care facility" includes any child care center or child care arrangements which provides child care for more than five children unrelated to the operator and which receives a payment, fee, or grant for any of the children receiving care, wherever operated, and whether or not operated for profit. *The following are not included: public schools and nonpublic schools and their integral programs*; summer camps having children in full-time residence; summer day camps; and Bible Schools normally conducted during vacation periods. [Emphasis supplied.]

Section 402.302(4), *Florida Statutes* 1985. The Senate Staff Analysis and Economic Impact Statement regarding the amendment of Chapter 402 provides that this change is a "Technical amendment which clarifies that public and nonpublic school programs are not subject to licensure as child care facilities." Respondent's Exhibit numbered 6.

5. Following the 1985 amendments to Chapter 402, HRS and the Palm Beach County Health Department (which was responsible for child care facility licensing in Palm Beach County) jointly requested a legal opinion from the Attorney General regarding the scope of the statutory exclusions from child care licensing laws for public and nonpublic schools and their integral programs. The specific question posed was as follows:

Do the exemptions under s. 402.302(4), F.S., as amended, and s. 9, Ch. 77-620, Laws of Florida, apply to public and nonpublic schools which offer:

A. Prekindergarten classes during regular school hours in the same physical plant or in an adjoining structure?

B. Infant care during regular school hours in the same physical plant or in an adjoining structure?

C. School age child care services before and after school hours in the same physical plant or in an adjoining structure?

In a lengthy analysis of the statutory exclusion of schools from child care facility licensing requirements, the Attorney General concluded:

In sum, then, and unless and until legislatively or judicially determined otherwise, it is my opinion that the exemptions under s. 402.302(4), F.S., as amended by CHs. 84-551 and 85.54, Laws of Florida, and s. 9, Ch. 77-620, Laws of Florida, apply to public and nonpublic schools which offer prekindergarten classes or infant care during regular school hours or school age child care services before and after school hours. . . . AGO 85-74, p. 7

6. Attorney General Opinion 85-74 also provides at page 3 as follows:

Thus, public schools and nonpublic schools and their integral programs are not "child care facilit[ies]" for purposes of ss. 402.301-402.319, F.S., as amended. The term "integral programs" is not defined within ss. 402.302-402.329, F.S., as amended, or Ch. 85-54, Laws of Florida; however, the word "integral" has generally been defined as "[c]onstituting a completed whole; . . . lacking nothing of completeness." *See*, C.J.S. *Integral* p. 1100; Ballentine's Law Dictio-

nary 645 (3rd ed. 1969). *And see*, Random House Dictionary of the English Language *Integral* p. 738 (unabridged ed. 1967) (pertaining to or belonging as a part of the whole; constituent or component; necessary to the completeness of the whole); Webster's Third International Dictionary *Integral* p. 1173 (1966) (composed of constituent parts; making up a whole). *Cf.*, Matezak v. Secretary of Health, Education and Welfare, 299 F. Supp. 409, 413 (D.C.N.Y. 1969) ("integral" means part of constituent component necessary or essential to complete the whole). *Whether a particular child care center or arrangement constitutes an integral program for puroses of s. 402.304(4), F.S., as amended, would appear to present a factual question which can only be reached on a case-by-case basis.* [Emphasis supplied.]

7. During the special session in 1984 and the regular session in 1985, the Legislature increased funding for HRS' child care facility licensing activities and also created 48 additional staff positions for those licensure activities.

8. Several HRS employees determined that (1) the Attorney General's Opinion was confusing, (2) it was too difficult to determine on a case-by-case basis whether a program was an integral part of a school or a child care facility, and (3) the exclusion of schools from child care facility licensing requirements was inconsistent with legislative intent of protecting children. Accordingly, HRS drafted an amendment to Rule 10M-12.001, *Florida Administrative Code*, to define the term "integral program". The "rule package" prepared by HRS in compliance with Section 120.54, *Florida Statutes*, commences with the following language:

Reason rule is being filed or amended:

Chapter 402.302(4), Florida Statutes, provides the definition of a child care facility. Public and nonpublic schools and their integral programs are precluded from this definition as a child care facility and therefore are not subject to licensure. . . . The term "integral programs", which is not defined by statute, is ambiguous and has been the subject of various interpretations by public and nonpublic schools. For purposes of licensure, this rule amendment is necessary in order to clarify which specific child care programs in the public and nonpublic schools are required to be licensed. Without the rule amendment, some schools will continue to interpret their "integral programs" as meaning their infant and preschool programs, or before and after school programs, thereby avoiding licensure and resulting in no regulation by the department . . .

234

9. Rule 10M-12.001, *Florida Administrative Code*, as proposed, would provide as follows:

(1) Child Care Standards and Licensure.

(a) Child Care Standards included in this chapter were adopted by the department to protect the health, safety and well being of the children of the State who receive child care in child care facilities as defined in Section 402.302, Florida Statutes, and to promote their emotional and intellectual development and care.

(b) Public and nonpublic schools and their integral programs are not child care facilities as defined in Section 402.302(4) Florida Statutes, and are not subject to licensure.

1. The term "integral programs" includes school activities which are directly related to the educational component of the school for 5 year old kindergarten programs through grade 12, and extra curricular activities, such as sport teams, school yearbook, school band, meetings, and service clubs. The term also includes child care programs administered directly by the school to care and supervise children from 5 year old kindergarten through grade 12 before and after the school day.

2. The term "integral program" does not include child care programs for children below 5 year old kindergarten, such as infants and preschoolers, and child care programs which are contracted by the school to provide care and supervision for children from 5 year old kindergarten through grade 12 before and after the school day.

10. The proposed rule as published and noticed by HRS, although defended by HRS vigorously in this proceeding, is not in fact the rule that HRS intends to adopt. HRS now admits that it has no authority to regulate any program in a public school since only the Florida Department of Education can regulate public schools. HRS intends, therefore, to delete the reference to public schools in its proposed rule and to only regulate nonpublic schools although it admits that such regulation of only nonpublic schools would therefore be discriminatory.

11. HRS further intends to amend its proposed rule so as to clarify that those nonpublic schools which are religious in affiliation will continue to enjoy the additional exemption from child care facility licensure given to them by Section 402.316(1), *Florida Statutes*, which provides:

The provisions of ss. 402.301-402.319, except for the requirements regarding screening of child care personnel, shall not apply to a child care facility which is an integral part of church or parochial schools

**235**

conducting regularly scheduled classes, courses of study, or education programs accredited by, or by a member of, an organization which publishes and requires compliance with its standards for health, safety, and sanitation. However, such facilities shall meet minimum requirements of the applicable local governing body as to health, sanitation, and safety and shall meet the screening requirements pursuant to ss. 402.305 and 402.3055. Failure by a facility to comply with such screening requirements shall result in the loss of the facility's exemption from licensure.

12. Petitioner Florida Association of Academic Nonpublic Schools (hereinafter "FAANS") is comprised of approximately 25 associations of schools. Additionally, archdioceses, which are separate corporate entities, and which own and operate schools, are direct members as are county organizations and the Florida Catholic Conference. The organization itself represents nonpublic schools in the state of Florida before state agencies, including the Legislature which it actively lobbies. It has a direct relationship as a state representative, one of only five in the country, with the United States Department of Education. It is involved in accreditation and has a code of ethics with which all schools (both direct members and indirect members) must comply. FAANS presently represents 943 schools with approximately 230,000 students, out of the approximate 1,750 nonpublic schools in the state of Florida. A majority of the schools represented by FAANS operate educational programs for children under 5 years of age. For the most part, these school programs are not licensed as child care facilities although some of the schools have licensed their programs under duress rather than have their programs closed by the child care facility licensing agencies. All of the nonpublic schools represented by FAANS comply with the Florida Department of Education requirement that they annually submit statistical information including the number of students and faculty in their prekindergarten programs for the Department of Education's Nonpublic School Data Base.

13. Petitioner Jacksonville County Day School presented no evidence in this proceeding.

14. Petitioner The Cushman School is a nonpublic school in Miami, Florida, and is an indirect member of FAANS. It has been in operation for 62 years and has operated educational programs for children under 5 since it was founded. It begins enrolling students at the age of 3 years (and on rare occasion 2 years) and offers education through grade 6. It is not presently licensed as a child care facility.

15. Under the proposed rule as published in the June 6, 1986,

236

*Florida Administrative Weekly,* The Cushman School would be required to obtain a child care facility license, the economic impact of which would be significant. First, it would lose its exemption from property taxes as an educational institution at a speculated cost of approximately $10,000. Structural modifications would need to be made to the school for bathing and sleeping facilities. Additional requirements, such as fencing and child-staff ratios, would come into play imposing more costs on the school. The Cushman School possesses historic site status which means even minor repairs, let alone structural modifications, have extensive restrictions imposed as to how they can be done and the materials that can be used. The end result is that if the proposed rule goes into effect, The Cushman School will have to discontinue its educational programs for child under 5 years of age. The economic impact of compliance with child care facility licensing requirements by schools is not unique to The Cushman School.

16. Section 120.54, *Florida Statutes,* requires each agency proposing or amending a rule to provide a detailed economic impact statement. The purpose of an economic impact statement is to promote informed decision-making by ensuring an accurate analysis of economic factors, and those factors an agency must consider are clearly specified. An agency must also consider the impact of a proposed rule on small businesses as defined in the Florida Small and Minority Business Assistance Act of 1985. There are nonpublic schools throughout Florida which fit the statutory definition of small business. It is clear from the economic impact statement for proposed rule 10M-12.001 that HRS did not consider the impact of the rule on small business nonpublic schools.

17. Also to be considered is the cost to an agency of implementing the rule. According to HRS' impact statement, actual implementation statewide will only cost $31. There is no consideration of additional staff time and paperwork to process applications, issue additional licenses, or conduct additional inspections.

18. There is no comment in the economic impact statement of the impact on competition and the open market for employment, or any indication that such an analysis is inapplicable; rather, the agency's estimate of effect on competition speaks to potential cost savings from deregulation of before and after school care programs.

19. Similarly, the required analysis of the costs or economic benefits to all persons directly affected by the proposed rule speaks in terms of deregulation and substantial savings and is, accordingly, deceptive.

20. An agency is also required to provide a detailed statement of the data and method used in making each of the estimates required in the economic impact statement. The only detailed statement in HRS' economic impact statement refers to the costs of printing and mailing, publication of the proposed rule in the *Florida Administrative Weekly*, and conducting a public hearing on the proposed rule. There is no hint of the data and method used, if any, in reaching other conclusions contained within the economic impact statement.

21. The economic impact statement accompanying proposed rule 10M-12.001 is inadequate.

22. Section 120.54(1), *Florida Statutes*, further requires that an agency proposing a rule give notice of its intended action and the specific legal authority under which its adoption is authorized. As set forth above, the rule proposed by HRS does not reflect its intended action since the rule purports to apply to both public and nonpublic schools and HRS intends to further amend the rule so as to exclude its application to public schools and its application to religious nonpublic schools.

23. As to the specific legal authority under which the proposed rule is authorized, HRS cites, at the end of the proposed rule, as its rulemaking authority Section 402.301, *Florida Statutes*. That section is entitled "Child care facilities; legislative intent and declaration of purpose and policy". Nowhere in that legislative intent section is HRS authorized to promulgate rules. The proposed rule thus fails to fulfill that requirement.

## CONCLUSIONS OF LAW

The Division of Administrative Hearings has jurisdiction over the parties hereto and the subject matter hereof. Section 120.54(4), *Florida Statutes*.

The parties agree that the burden of proof is on Petitioners to show that proposed rule 10M-12.001 is an invalid exercise of delegated legislative authority. Petitioner Jacksonville Country Day School presented no evidence. Accordingly, Petitioner Jacksonville Country Day School is hereby dismissed from this proceeding.

Petitioners FAANS and The Cushman School, however, have successfully met their burden of proof to show that the proposed rule is an invalid exercise of delegated legislative authority. Although the proposed rule purports to implement the definition section of Chapter 402 governing child care facilities, the proposed rule is an attempt by HRS to legislate by defining "and their integral programs" to exclude from

238

the definition of both public and nonpublic schools anything other than "5 year old kindergarten programs through grade 12." By doing so, HRS undertakes to legislate what a school is and is not. The amendment to Section 402.302(4), *Florida Statutes,* can be viewed in only one of two ways: as a clarification of original legislative intent that programs in public and nonpublic schools are excluded from child care facility licensure, or as an expansion of the previous exclusion. It is clearly not a limitation or restriction of the exclusion.

The statute, unlike the proposed rule, does not specifically define the terms "integral programs" or "schools." Therefore, they are to be given their plain and ordinary meaning. *Department of Business Regulation v. Salvation Limited, Inc.,* 452 So.2d 65 (Fla. 1st DCA 1984). As pointed out in the Attorney General's Opinion set forth above, "integral" means constituting a completed whole, pertaining to or belonging as a part of the whole. Further, a school is commonly understood to be an institution consisting of a teacher and pupils, irrespective of age, gathered together for instruction. By placing a 5 year-old age limitation on schools, and excluding from the definition educational classes and other programs for children under 5 years of age, HRS has violated the statutory construction plain meaning rule and has exceeded its rulemaking authority. If the Legislature had intended to impose an age limitation on the child care facility licensure exclusion for school programs, it could easily have said so rather than completely excluding public and nonpublic schools.

Perceived necessity for or desirability of an administrative rule does not, of itself, bring into existence authority to promulgate such rule. *4245 Corporation v. Division of Beverage,* 371 So.2d 1032 (Fla. 1st DCA 1978). Administrative agencies have no inherent rulemaking authority but have only the authority granted them by statute. Section 120.54(15), *Florida Statutes.* An administrative rule may not add to, amend, modify, or contravene provisions of a statute. A rule which purports to do so is an invalid exercise of delegated legislative authority. *Department of Business Regulation v. Salvation Limited, Inc., supra.* That is the case here.

Under the Compulsory School Attendance Law, children between the ages of 6 and 16 must attend school, Section 232.01, *Florida Statutes* (1985), and a child must complete kindergarten in order to enter first grade. For purposes of publicly supported education, a child must be at least 5 years old to enter *public* kindergarten. Section 232.04, *Florida Statutes* (1985). These statutes are the source of HRS' use of "5 year old kindergarten" to delineate between child care

**239**

facilities and schools. However, that delineation is not required or even suggested by those statutes.

The age limitation for eligibility for *public* kindergarten is placed upon the child. The Legislature has refused to impose age restrictions on students enrolled in *nonpublic* schools. In fact, the Legislature has chosen to leave matters such as academic and other program development, curricula, and teacher qualifications to nonpublic schools and their accrediting associations. This is one characteristic which distinguishes nonpublic schools from public schools.

Section 402.302(4), *Florida Statutes,* formerly excluded from the definition of "child care facility" public and nonpublic schools "which are in compliance with the Compulsory School Attendance Law, Chapter 232." Under that language, HRS might have argued (be it illogical) that it was justified in defining a school in terms of a 5-year-old age limitation. Significantly, by its 1985 amendment, the Legislature removed the reference to the Compulsory School Attendance Law. It is axiomatic that legislative enactments are presumed to have some meaning. Here, it is plain that no age limitation on schools and their integral programs is to be imposed by analogy to the Compulsory School Attendance Law. The law itself makes this meaning clear:

> [n]othing in this section shall authorize the state or any school district to oversee or exercise control over the curricula or academic programs of nonpublic schools.

Section 232.01(1)(b)1., *Florida Statutes* (1985).

The policy that nonpublic school programs shall remain free of regulation is again expressed in Section 229.808, *Florida Statutes* (1985). That statute requires nonpublic schools to submit to the Department of Education an annual data base survey and further provides:

> It is the intent of the Legislature not to regulate, control, approve, or accredit nonpublic educational institutions, but to create a data base where current information may be obtained relative to the educational institutions in this state coming within the provisions of this section as a service to the public, to governmental agencies, and to the other interested parties.

Section 229.808(7), *Florida Statutes* (1985).

Nonpublic schools provide educational opportunities for children less than 5 years of age. The evidence indicates that those classes are located in the same physical facility as the rest of the school, the teachers are part of the schools' teaching staffs, they have the same

240

principal, and students must satisfactorily complete each grade level in order to advance to the next, the same as in school classes for older children. Religious nonpublic schools, in addition to educational programs, have also developed infant and day care services as integral parts of their schools and their ministries. All of these programs, educational and day care, are excluded from the definition of "child care facility" in Chapter 402; yet, proposed rule 10M-12.001 would repeal that exemption.

*In Re: Miami Christian School, Inc.*, 15 Fla. Supp. 2d 171 (March 1985), concerned a determination by the Property Appraiser of Dade County that certain schools be partially denied ad valorem tax exemptions because the schools were attended by children under 5 years of age. The affected schools maintained that they were "educational institutions" and qualified for the exemptions. In recommending that the exemptions be granted in full, the Special Master opined:

> There is simply no provision in the Florida Constitution or in the relevant [tax] statutes which excludes wholly, or in part, from the definition of "education institutions" those schools which admit or integrate into their systems children who are younger than five (5) years of age. Nor is there any . . . decision known to the undersigned which would justify the engrafting onto the statutory language any such limiting proviso.
>
> .    .    .    .    .    .    .    .    .    .    .    .
>
> [T]he undersigned concludes that the Property Appraiser in this instance has simply exceeded his authority in denying the exemptions of the affected schools simply because they have attempted to admit and to integrate into their systems children who are less than five (5) years of age. If the notion of "education" is to be redefined at this late date in such fashion as to exclude the learning programs for children of certain age groups, same should be done by the constitutional lawmakers . . . .

*Id.*, at pp. 174, 175. The reasoning of the Special Master in that case applies quite well in this case.

The educational freedom of nonpublic schools does not mean that there is no state oversight or control over them. The Department of Education regulates nonpublic schools to the extent that they are required to submit the annual data base survey. Nonpublic schools are subject to local zoning ordinances. They are inspected by the state fire marshal for fire safety. They are inspected by HRS under Chapter 10D-24, *Florida Administrative Code*, governing school sanitation. Their school buses are inspected, and drivers are required to be

properly licensed by the Department of Highway Safety and Motor Vehicles. In short, nonpublic schools do comply with the state's police power regulations regarding health, safety, and sanitation.

Chapter 402, *Florida Statutes*, only purports to regulate child care facilities and specifically excludes public and nonpublic schools and their integral programs from the requirements of child care facility licensure. Proposed rule 10M-12.001 in effect amends that statute by modifying the exemption given to schools by the Legislature. Further, by utilizing a five-year old cut-off age to define what is a school and what is child care facility HRS further attempts to amend the statute by adding a criterion which the Legislature choose not to add. Such simply cannot be done.

The five-year old cut-off age is arbitrary and unreasonable. It continues to be drawn from analogy to some portions—but some some —of the Florida School Code, i.e., that public schools must include kindergarten, and that a child must be 5 years old to attend public kindergarten. However, the Florida School Code also provides that public schools may include nurseries for 4-year-olds and that, in some instances, 3-year-olds may be admitted to public school. The Legislature has not chosen to define schools in terms of students' ages. It has merely made a policy choice as to the age of children for whom publicly supported education will be provided.

It is interesting to note that HRS admits in this cause that it cannot regulate as child care facilities programs in public schools and programs in religious nonpublic schools since it has no authority to do so. It further admits that requiring licensure of only programs in nonreligious nonpublic schools would be discriminatory. Yet, it fails to see that promulgating a rule that does so is arbitrary, capricious, and unreasonable.

Proposed rule 10M-12.001 is also invalid for its failure to comply with the rulemaking and adoption procedures in Section 120.54, *Florida Statutes*, in a number of respects. First, the proposed rule does not given notice of the agency's intended action since the agency has already admitted that it intends to substantially amend its proposed rule to conform with its real intent of only licensing programs in nonreligious nonpublic schools. Second, the specific legal authority relied upon by HRS for authorization of adoption of its proposed rule does not give rulemaking authority to HRS. Third, the economic impact statement accompanying the rule is both inadequate and deceptive.

Petitioners FAANS and The Cushman School have clearly met their

242

burden of proof by competent substantial evidence that proposed rule 10M-12.001 is an invalid exercise of delegated legislative authority and that they are substantially affected persons who have standing to challenge that proposed rule. *Florida Home Builders Association v. Department of Labor and Employment Security*, 412 So.2d 351 (Fla. 1982). It is, therefore,

CONCLUDED and ORDERED that proposed rule 10M-12.001 constitutes an invalid exercise of delegated legislative authority.

DONE and ORDERED this 3rd day of October, 1986, at Tallahassee, Florida.