444 So.2d 483 (1984)
BREWSTER PHOSPHATES, First Mississippi Corporation and International Minerals & Chemical Corporation, Appellants,
v.
STATE of Florida, DEPARTMENT OF ENVIRONMENTAL REGULATION, Appellee.
No. AO-473.
District Court of Appeal of Florida, First District.
January 10, 1984.
*484 Roger W. Sims and Lawrence E. Sellers, Jr., of Holland & Knight, Lakeland, for appellants.
Bram D.E. Canter, Asst. Gen. Counsel, Dept. of Environmental Regulation, for appellee.
Thomas W. Reese, St. Petersburg, Edward P. de la Parte, Jr. and Edward M. Chew, of de la Parte & Gilbert, Tampa, Mygnon Evans, Florida Citrus Mutual, Lakeland, amicus curiae.
*485 WENTWORTH, Judge.
This is an appeal from final action of the Department of Environmental Regulation adopting amendments to rules 17-3.041 and 17-4.242 of the Florida Administrative Code. The amendment to rule 17-3.041 adds a section of the Little Manatee River to the list of Outstanding Florida Waters (OFW). Appellants own land in the watershed of the Little Manatee and its tributaries and objected to the OFW designation. Contending that the designation was invalid, appellants raise six points in this appeal. Stated succinctly, they are: (1) the designation is invalid because it was authorized by an improper delegation of legislative authority in violation of Article II, section 3 of the Florida Constitution; (2) the agricultural exemption amendment to rule 17-4.242 which accompanied the designation was invalid; (3) the accompanying agricultural amendment violates the equal protection clause of the fourteenth amendment; (4) the environmental, social and economic benefits of the designation do not outweigh the associated costs; (5) the designated portion is not of exceptional recreational or ecological significance; and (6) the economic impact statement is insufficient. We disagree with appellants on all grounds, and affirm the rule amendments.[1]
Appellants' contention that rule 17-4.031 is the product of a standardless delegation of legislative power depends upon their assertion that the only specific authority for the rule is subsection 27 of § 403.061, Florida Statutes (1982 Supp.). That section provides:
403.061 Department; powers and duties. The department shall have the power and the duty to control and prohibit pollution of air and water in accordance with the law and rules and regulations adopted and promulgated by it, and for this purpose to:
.....
(27) Establish rules which provide for a special category of water bodies within the state, to be referred to as "outstanding Florida waters," which water bodies shall be worthy of special protection because of their natural attributes. Nothing in this subsection shall affect any existing rules of the department.
While subsection 27 may contain the only mention of the express words "outstanding Florida waters," it is only one part of an extensive legislative scheme requiring the Department to study, classify, develop long range plans for, and supervise all of Florida's waters.[2] Subsection 27 should not be read in a vacuum, but in pari-materia with the overall legislative scheme as set out in Chapter 403 as whole. When so read, it becomes clear that there are sufficient standards to guide the Department in its determinations of which waters in Florida should be designated outstanding.
In Askew v. Cross Key Waterways, 372 So.2d 913 (Fla. 1979), the Supreme Court noted that the required "specificity of standards and guidelines may depend upon the subject matter dealt with and the degree of difficulty involved in articulating finite standards." Id. at 918. Obviously, the Legislature itself cannot perform the task it has assigned to the Department. Thus, delegation is necessary and the magnitude of the task makes the articulation of finite standards, to be applied to all of the waters of this state, impossible. Still, primarily through § 403.061, the Legislature has provided the Department with considerable standards for classifying state waters. The Department is charged with carrying out the purposes of the Act (to control and prohibit pollution of air and water) including but not limited to classifying waters by their most beneficial use,[3] establishing ambient *486 water quality standards,[4] and conducting periodic field studies of pollution levels.[5] In short, the standards found in § 403.061 are more specific than those which were held invalid in Cross Key, while the subject matter is necessarily much broader. Thus, § 403.061 provides the Department with sufficient standards enabling it to "flesh out" an articulated legislative policy, without offense to Article II, Section 3 of the Florida Constitution.
Appellants' second and third points challenge the "agricultural exemption" amendment to rule 17-4.242 on procedural grounds and as being in violation of the equal protection clause of the United States Constitution. However, their argument focuses not so much on the effect of these alleged errors on the agricultural amendment, but on their contention that the alleged invalidation of the agricultural amendment somehow tainted the OFW designation of the Little Manatee. There is no apparent merit in appellants' contention that the agricultural amendment is invalid, but even if there were, appellants have not demonstrated the consequent adverse impact on them or on the designation.
The agricultural amendment to rule 17-4.242 provides:
(f) Any activity that is exempted from permit programs administered by the Department, and any non-point source on land used for agricultural purposes is not subject to the requirements of Section 17-4.242.
As can be seen from the language of the amendment, it does not relate to appellants' activities. Appellants assert that the designation of the Little Manatee would not have been approved by the Environmental Regulation Commission but for the passage of the agricultural amendment. This assertion, however, is nothing more than a speculative conclusion unsupported by the record. Appellants therefore have shown no standing to challenge the validity of the amendment on procedural grounds.[6]
Appellants' argument that the agricultural amendment denies them equal protection of the law borders on the frivolous. We find nothing arbitrary or unreasonable in treating the agricultural industry different from the phosphate mining industry. The equal protection clause does not prohibit the creation of regulatory classifications which are based on differing degrees of harm or risk of harm arising from the classified activity. Fischer v. State, 379 So.2d 947 (Fla. 1979).
In the fourth point raised by appellants, they argue that the Commission's implicit finding, that the environmental, social, and economic benefits of the designation do not outweigh the associated costs,[7] is a finding not supported by competent substantial evidence. However, this is a direct appeal from a rule enactment pursuant to § 120.54, and not an appeal from a rule challenge pursuant to § 120.56.[8] The scope of review of the quasi-legislative function of rulemaking is more limited than that with respect to quasi-judicial action,[9] and upon such review a rule will not be reversed absent a flagrant abuse of discretion.[10] In view of the department's report to the Commission, which details the social, ecological, and economic benefits of the designation, appellants have not shown such an abuse.[11]
*487 Appellants' fifth point on appeal, that the designated portion is not of exceptional recreational or ecological significance,[12] is rejected for the same reason as point four. That is, they have not shown a flagrant abuse of discretion on the part of the Commission in adopting the rule amendment.
In their final point, appellants argue that the designation was invalid because the economic impact statement compiled by the Department in accordance with § 120.54(2)(a) was insufficient.[13] According to appellants the Department under-estimated the cost of the designation to them because it ignored evidence presented by them at the public hearing. That evidence, however, was not provided to the Department until the night before the hearing, and the record indicates that appellants were generally uncooperative with the Department's efforts to compile an adequate statement. Thus, they may not now reasonably complain that the EIS is insufficient because it did not contain the same conclusions regarding estimated costs as did the appellants' report. In essence appellants are arguing that the Commission erred in accepting the Department's data and rejecting that from appellants. However, both reports are apparently predicated on competent evidence, and the Commission was responsible for rejecting or accepting one version or the other. We, of course, will not overturn their determination of what is essentially a factual issue.
As a matter of law, the economic impact statement was sufficient. As in State Department of Insurance v. Insurance Service Office, 434 So.2d 908 (Fla. 1st DCA 1983),[14] the Department's statement is a lengthy (ten page) document which complies paragraph by paragraph with the substantive requirements of § 120.54(2)(a). Admittedly, some of the costs are speculative or incapable altogether of estimation, in view of the fact that appellants have no immediate plans for development of their property as phosphate mining sites.[15] As in State Department of Insurance, however, the Department can hardly be faulted for failing to make estimates on the basis of unknown variables.
For the foregoing reasons, the agency action amending rules 17-3.041 and 17-4.242 of the Florida Administrative Code is affirmed.
LARRY G. SMITH and JOANOS, JJ., concur.
NOTES
[1] This opinion will briefly address each of the points raised by appellants. While we decline to specifically address some of the sub-issues argued by appellants, they have not been overlooked but have been considered and found to be without merit.
[2] §§ 403.061(1); 403.061(5); 403.062; 403.087.
[3] § 403.061(10).
[4] § 403.061(11).
[5] § 403.061(12).
[6] In any event, the procedural requirements for rule adoption proceedings were substantially complied with so that even if appellants could show that they were affected by the amendment itself, they have not shown that they were prejudiced by the complained of deficiencies.
[7] Fla. Admin. Code Rule 17-4.041(2)(f).
[8] Compare Agrico Chemical Co. v. Department of Environmental Regulation, 365 So.2d 759 (Fla. 1st DCA 1978).
[9] Broward County v. Administration Commission, 321 So.2d 605 (Fla. 1st DCA 1975).
[10] Polk v. School Board of Polk County, 373 So.2d 960 (Fla. 2d DCA 1979).
[11] Once again we note that even if appellants were correct regarding the standard of review, their argument would be unavailing since there is competent substantial evidence in the record indicating that the social, environmental and economic benefits of the designation outweigh the costs.
[12] Fla. Admin. Code Rule 17-3.041(2)(f).
[13] Section 120.54(2)(a)2 provides:

(2)(a) Each agency, prior to the adoption, amendment, or repeal of any rule, shall provide information on its proposed action by preparing a detailed economic impact statement. The economic impact statement shall include:
1. An estimate of the cost to the agency of the implementation of the proposed action, including the estimated amount of paperwork;
2. An estimate of the cost or the economic benefit to all persons directly affected by the proposed action;
3. An estimate of the impact of the proposed action on competition and the open market for employment, if applicable; and
4. A detailed statement of the data and method used in making each of the above estimates.
[14] See the concurring and dissenting opinions as they pertain to the issue of the economic impact statement in that case.
[15] A planning director for International Minerals and Chemical Corporation testified that mining operations might commence "ten years down the road." There does not appear to be record evidence that Brewster Phosphates has such specific plans.