475 So.2d 939 (1985)
DEPARTMENT OF PROFESSIONAL REGULATION, BOARD OF PROFESSIONAL ENGINEERS, Appellant,
v.
FLORIDA SOCIETY OF PROFESSIONAL LAND SURVEYORS, Buddy Harper, and Robert A. (Buddy) Bannerman, Appellees.
No. AY-273.
District Court of Appeal of Florida, First District.
September 4, 1985.
Rehearing Denied October 10, 1985.
*940 John J. Rimes, III, Asst. Atty. Gen., Tallahassee, for appellant.
J. Michael Huey and J. Stephen Menton of Akerman, Senterfitt & Eidson, Tallahassee, for appellees.
ZEHMER, Judge.
The Board of Professional Engineers of the Department of Professional Regulation (Board) appeals an order entered by the Division of Administrative Hearings determining that the Board's proposed rule challenged by appellees, the Florida Society of Professional Land Surveyors and two licensed land surveyors, constitutes an invalid exercise of delegated legislative authority. We reverse.
Proposed rule 21H-18.11(4), Florida Administrative Code, amends existing rule 21H-18.11 to add a definition of the term "engineering survey" as used in section 471.005(4)(a), Florida Statutes (1983). Although chapter 471, Florida Statutes, which regulates professional engineers, contains no general provision authorizing the Board to make such rules as may be necessary to carry out the duties and authority conferred upon it, the proposed rule is said to be necessary to implement section 471.005(4)(a), and that section is implied authority for promulgating the rule.
Section 471.005(4)(a) reads in part:
"Engineering" includes the term "professional engineering" and means any service or creative work, the adequate performance of which requires engineering education, training, and experience, in the application of special knowledge of the mathematical, physical, and engineering sciences to such services or creative work as consultation, investigation, evaluation, planning, and design of engineering works and systems, planning the use of land and water, teaching of the principles and methods of engineering design, engineering surveys and the inspection of construction for the purpose of determining in general if the work is proceeding in compliance with drawings and specifications; any of which embraces such services or work ... in connection with any utilities, structures, buildings, machines, equipment, processes, work systems, projects, and industrial or consumer products or equipment of a mechanical, electrical, hydraulic, pneumatic, or thermal nature, insofar as they involve safeguarding life, health, or property, and including such other professional services as may be necessary to the planning, progress, and completion of any engineering services. [Emphasis added.]
The proposed rule, published in 10 F.A.W. 186 (January 20, 1984), reads as follows:
21H-18.11 Definitions. As used in chapter 471 and in these rules where the context will permit, the following terms have the following meanings:
* * * * * *
(4) The term "Engineering Survey" as used in section 471.005(4)(a), F.S., is defined as surveys made to obtain data for planning, design, and execution of engineering projects or developments; and may be necessary for the planning, progress, and completion of any engineering services. These surveys include, but are not limited to, construction layout, topographic surveys, hydrographic surveys, quantity surveys, and special purpose surveys to the extent that all the aforementioned surveys relate to engineering services.
Appellees filed a petition pursuant to section 120.54(4), Florida Statutes (1983), challenging the validity of the proposed rule as exceeding the Board's delegated authority because the rule includes in the definition of "engineering survey" acts and services which appellees say constitute land surveying as defined in section 472.005(4), Florida Statutes (1983), that may be lawfully performed only by licensed land surveyors. The parties filed a joint stipulation of facts that recognized appellees' standing to challenge the rule, agreed that "the notice of the proposed rule and the rule itself first published in Volume 10, Number 2, Florida Administrative Weekly, are hereby stipulated *941 into evidence as forming the basis of the matter in controversy in this case," that the sole issue for determination is "whether the Respondent [Board] has the authority to promulgate the rule in question," and that the matter would be submitted to the hearing officer on legal memoranda from the respective parties for summary disposition (R. 9-10).
The hearing officer concluded that the proposed rule constitutes an invalid exercise of delegated legislative authority because there is no statutory provision in chapter 471 granting the Board general rulemaking authority.
On appeal, the Board argues that the proposed rule is clearly definitional in nature and, thus, is simply an exercise of the implied authority which any board regulating a profession must have to explain the meaning of technical terms contained within the statutory provisions. The Board also says that the definition of "engineering surveys" in the proposed rule is based entirely on the generally accepted use of that term as it has existed since the state commenced regulating the engineering profession more than fifty years ago. They point to the stated purpose, effect, and summary of the proposed rule published in Florida Administrative Weekly, which reads:
The purpose of the proposed rule is to define the term "engineering survey" as used in Ch. 471.005(4)(a). The rule sets forth those generally accepted types of "surveying" which qualified professional engineers have as a matter of course performed in this state. It is recognized that certain of these activities may also be provided by professional land surveyors licensed under Ch. 472, F.S. The proposed rule essentially codifies previous rulings of the Joint Board of Professional Engineers and Land Surveyors as it existed prior to 1979 and further amplifies generally accepted types of "surveying" which are nationally accepted as being capable of being performed by qualified professional engineers.
10 F.A.W. at 186. The Board further points to the minimum economic impact the proposed rule will have upon implementation. Again quoting from Florida Administrative Weekly, at page 186:
The proposed rule should have minimal economic impact insofar as present engineering practice in the State of Florida encompasses all of the types of `engineering surveying' which are set forth in the proposed rule. This estimate is based upon the fact that the definition of `engineering' in Ch. 471, F.S. has not been changed for several decades and various rulings of the Board of Professional Engineers and Land Surveyors (prior to 1979) as well as nationally accepted demarcations between those areas which are solely the practice of professional engineering and those of land surveyoring which have been followed in the State of Florida permit the overlap of functions between those individuals licensed under Ch. 471 and Ch. 472, F.S. to the extent set forth in the proposed rule.
Appellees argue that there is simply no grant of rulemaking power within chapter 471 which would authorize the Board to define the term as set forth in the proposed rule and that the proposed definition of "engineering survey" includes a wide variety of activities which fall under the definition of "land surveying" as that term is defined in section 472.005(4)(a). Thus, appellees argue, such grant of rulemaking authority represents a significant policy decision beyond the Board's delegated authority which can be made only by the legislature through statutory amendments.
To successfully challenge the validity of an agency rule, one must show that (1) the agency adopting the rule has exceeded its authority, (2) the requirements of the rule are not appropriate to the ends specified in the legislative act, and (3) that requirements contained in the rule are not reasonably related to the purpose of the enabling legislation, but are arbitrary or capricious. Agrico Chemical Co. v. State, Department of Environmental Regulation, 365 So.2d 759 (Fla. 1st DCA 1979); *942 Dept. of Administration, Division of Retirement v. Albanese, 445 So.2d 639 (Fla. 1st DCA 1984). The appealed decision was predicated entirely on the first criterion and did not address the remaining two criteria.
Admittedly, section 471.005, Florida Statutes (1983), contains no specific legislative grant of rulemaking authority; nor does chapter 471 contain any general provision granting the Board broad rulemaking authority similar to that found in many other statutes.[1] In holding that the proposed rule exceeded delegated legislative authority, the hearing officer expressly noted, on pages 5-6 of his final order:
This conclusion is buttressed by the well-established rule of statutory construction that `[w]hen what is expressed in a statute is creative .. ., it is exclusive, and the power exists only to the extent plainly granted... .' 2A Sutherland, Statutory Construction, Section 47.23 (4th ed. 1973). Where, as here, the legislature has delegated rulemaking authority to an agency in several narrowly defined areas, a more generalized rulemaking authority should not be deemed conferred by implication. See, Department of Administration v. Albanese, [445 So.2d 639] Case Number AR-108 (Fla. 1st DCA, Feb. 13, 1984).
(R. 36-37). Moreover, the order noted that the proposed rule might be sustainable "if, as in Florida Beverage Corporation v. Wynne, 306 So.2d 200 (Fla. 1st DCA 1975), its enabling legislation had entitled it to `make such rules and regulations as may be necessary to carry out the provisions of this Act'" (R. 36).
We agree with the conclusion in the final order that no agency has inherent rulemaking authority and that any rulemaking authority which the legislature may validly delegate to administrative agencies is limited by the statute conferring the power. Section 120.54(14), Florida Statutes (1983), provides:
No agency has inherent rulemaking authority; nor has any agency authority to establish penalties for violation of a rule unless the Legislature, when establishing a penalty, specifically provides that the penalty applies to rules. However, an agency may adopt rules necessary to the proper implementation of a statute prior to the effective date of the statute, but the rules may not be enforced until the statute upon which they are based is effective.
Obviously no agency has "inherent" authority to adopt rules by reason of the agency's authority to perform quasi-legislative functions. The plain language of the quoted section does, however, recognize that rulemaking authority may be implied to the extent necessary to properly implement a statute governing the agency's statutory duties and responsibilities. It has been judicially recognized that, notwithstanding the proscription of inherent rulemaking authority, agencies may have rulemaking authority fairly implied from the statutory provisions governing them. State Board of Education v. Nelson, 372 So.2d 114 (Fla. 1st DCA 1979); Peck Plaza Condominium v. Division of Florida Land Sales & Condominiums, 371 So.2d 152 (Fla. 1st DCA 1979). Chapter 471 contains several statutory provisions expressly authorizing the Board to adopt rules. Section 471.013 provides that the Board shall adopt rules providing for the review and approval of schools or colleges and the courses of study in engineering in such schools and colleges, which shall be based on the educational requirements for engineering as defined in section 471.005. The Board may adopt rules providing for the acceptance of the approval and accreditation of schools and courses of study by a nationally accepted accreditation organization. *943 Of course, the definition of "engineering" in section 471.005 includes the term "engineering survey." Therefore, since "engineering survey" is not a self-defining term, the Board would have no objectively defined standard by which to review and approve courses of study in engineering as they relate to engineering surveys without implying authority from this provision to enact a rule defining such term.
Similarly, section 471.033 specifies certain acts which constitute grounds for disciplinary action concerning the practice of engineering. Subsection (2) of that section specifically states that "the Board shall specify, by rule, what acts or omissions constitute a violation of subsection (1)." Under the statute, a registrant may be disciplined if he is convicted or found guilty of a crime which relates to the practice of engineering or the ability to practice engineering; advertises goods or services in a manner which is fraudulent or misleading; or practices fraud or deceit, negligence, incompetence or misconduct, in the practice of engineering. To understand the statutory provisions, reference to the statutory definition of engineering is obviously necessary. For example, if a registrant's license may be suspended or revoked for advertising engineering services that include "engineering surveys," the Board clearly has implied authority to define the term "engineering surveys" as part of its expressly delegated power under subsection (2).
We hold, therefore, that the specific rulemaking authority delegated to the Board in sections 471.011, 471.013, 471.019, 471.025, and 471.033 provide a sufficient statutory basis for implying the Board's authority to promulgate rules defining the term "engineering surveys." We reject the hearing officer's conclusion that these specific statutory delegations of rulemaking authority inhibit, rather than authorize, the Board's power to adopt definitional rules.
Our conclusion is further supported by the fact that the Board, under section 120.565, Florida Statutes (1983), is required to give declaratory statements with regard to the meaning of the terms contained within the statute or rules promulgated by the Board. Such declaratory statements are, in part, an agency's opinion on the applicability of a specified statutory provision to a particular set of circumstances and may, in certain instances, constitute a rule. Thus, where an agency's declaratory statements are of such a general and consistent nature as to meet the definition of a rule, the statements must be promulgated in accordance with the provisions of section 120.54 governing rulemaking. State, Department of Administration v. Harvey, 356 So.2d 323 (Fla. 1st DCA 1978); Price Wise Buying Group v. Nuzum, 343 So.2d 115 (Fla. 1st DCA 1977). The power to issue such declaratory statements carries with it the implied power to define engineering surveys, whether or not that amounts to rulemaking. We decline, therefore, to affirm the invalidation of the challenged rule on the ground that the Board lacked rulemaking authority to promulgate definitional rules of this nature.
Appellees argue, however, that, even if we find such implied authority, the proposed rule is nevertheless invalid on its face as a matter of law because it clearly defines "engineering surveys" to include acts and services that are authorized to be performed only by land surveyors under chapter 472, and that nothing stated in chapter 472 permits professional engineers to perform such land surveying services incidental to their engineering work. It is appellees' position that professional engineers regulated under chapter 471 can no longer perform any acts described in the definition of "land surveying" in section 472.005, even though such services are merely incidental to the performance of engineering services as defined in chapter 471. For example, at oral argument counsel for appellees stated that construction layout, i.e., the surveying of the foundation and layout of a building being constructed under the general supervision of a licensed engineer trained in such matters to assure compliance with plans furnished by his or *944 her engineering firm, must be done by a licensed land surveyor, regardless of how incidental that service might be to the total engineering services being furnished. Appellant, on the other hand, points to the fact that prior to 1979, when the two professions became subject to regulation by separate boards rather than a single board, such services were routinely performed by licensed engineers and that there has been no change in the statutory language defining the practice of engineering and defining land surveying. Accordingly, appellant argues that there is no basis to conclude any legislative intent to change the prior construction of the statute, including the meaning of the term "engineering surveys," so as to preclude any overlap of incidental services. The Board argues that there is a necessary overlap of certain functions performed by licensed engineers and land surveyors and that this has been long recognized under the identical statutory language involved in this case.
We decline appellees' invitation to affirm the order below on the grounds that the proposed rule is invalid as a matter of law because it appears to embrace certain activities falling within the statutory definition of "land surveyor" in section 472.005. We simply cannot discern any overt legislative intent to create such an absolute wall or barrier between the practice of engineering and the practice of land surveying that all services falling within the broad definition of "land surveying" must be excluded from the definition of "engineering surveys," no matter how small or incidental such services may be to the performance of professional engineering activities regulated under chapter 471. The legislative exercise of police power to regulate engineers and land surveyors, as with other professions, is for the protection of the public against injury or damage due to lack of knowledge or incompetency, sections 471.001 and 472.001, Florida Statutes (1983); it is not for the purpose of creating a monopoly in the hands of one group of professionals to the exclusion of the other absent real concern for injury to the public. Therefore, the past construction of the statutes, the absence of any change of statutory language in the definitional sections of both chapters, and the apparent fact that the proposed rule is consistent with past practices, support our conclusion that the proposed rule is not invalid as a matter of law merely because it appears to authorize engineers to perform certain functions under "engineering surveys" that also appear to fall within the definition of "land surveying."
Appellees contend that if we do not invalidate the proposed rule on this ground, this matter should be remanded to the hearing officer for the taking of evidence on the factual recitations accompanying the proposed rule in Florida Administrative Weekly, as they dispute these facts. We agree that appellees have not had an opportunity to dispute the facts so recited because the matter was presented and decided summarily as a pure question of law. Accordingly, we vacate the order invalidating the proposed rule and remand this matter for an evidentiary hearing and further findings of fact and conclusions of law consistent with this opinion.
REVERSED and REMANDED.
SMITH and BARFIELD, JJ., concur.
NOTES
[1] See, e.g., Grove Isle, Ltd. v. State, Dept. of Environmental Regulation, 454 So.2d 571 (Fla. 1st DCA 1984); Dept. of Administration, Division of Retirement v. Albanese, 445 So.2d 639 (Fla. 1st DCA 1984); Dept. of Health & Rehabilitative Services v. Florida Psychiatric Society, 382 So.2d 1280 (Fla. 1st DCA 1979); Cook v. Division of Personnel, Dept. of Administrative, 356 So.2d 356 (Fla. 1st DCA 1978); State, Dept. of Administration v. Harvey, 356 So.2d 323 (Fla. 1st DCA 1978).