534 So.2d 419 (1988)
BOOKER CREEK PRESERVATION, INC. Manasota 88, Inc. and Sierra Club, Appellants,
v.
SOUTHWEST FLORIDA WATER MANAGEMENT DISTRICT, Appellee.
No. 87-556.
District Court of Appeal of Florida, Fifth District.
September 22, 1988.
Rehearing Denied December 17, 1988.
*420 Peter B. Belmont, St. Petersburg, for appellants.
Kent A. Zaiser, Deputy Gen. Counsel, and A. Patricia Allen, Sr. Atty., Southwest Florida Water Management Dist., Brooksville, for appellee.
Roger W. Sims and Lawrence E. Sellers, Jr., Holland & Knight, Tallahassee, for amicus curiae, Florida Phosphate Council, Inc.
SHARP, Chief Judge.
Booker Creek Preservation, Inc., Manasota 88, Inc., and Sierra Club challenge the twelve exemptions created by the Southwest Florida Water Management District (the "District") in its newly adopted rule which establishes permitting criteria for isolated wetlands. Appellants appeared at the public hearings held by the District prior to its adoption of the rule. They timely appeal from an order of the District which adopted the rule[1] and take the position that none of the exemptions contained in the rule are valid or authorized by section 373.414. We agree in part.
Section 373.414(1) required the District to "adopt a rule which establishes specific permitting criteria for certain small isolated wetlands which are not within the jurisdiction of the department [Department of Environmental Regulation] for purposes of dredging and filling. Section 373.414 provides:
373.414 Wetlands. 
(1) By March 31, 1987, for those water management districts to which the department has delegated the responsibility for administration of its stormwater rule, each district shall adopt a rule which establishes specific permitting criteria for certain small isolated wetlands which are not within the jurisdiction of the department for purposes of regulation of dredging and filling. The rule shall include:
(a) One or more size thresholds of isolated wetlands below which impacts on fish and wildlife and their habitats will not be considered. These thresholds shall be based on biological and hydrological evidence that shows the fish and wildlife values of such areas to be minimal;
(b) Criteria for review of fish and wildlife and their habitats for isolated wetlands larger than the minimum size;
(c) Criteria for the protection of threatened and endangered species in isolated wetlands regardless of size and land use; and
(d) Provisions for consideration of the cumulative and offsite impacts of a project or projects.
(2) This section does not affect the authority of the water management districts to regulate impacts on water quality and water quantity.
Earlier, the District was given the responsibility for overseeing the management and storage of surface waters within its territory in Part IV of Chapter 373. As part of its enforcement tools, the District was empowered to measure and regulate dams, impoundments, reservoirs, and appurtenant works (§ 373.409), to require permits for the construction or alteration (§ 373.413), maintenance and operation of such structures (§ 373.416). In contrast with section 373.414, all three of these earlier sections employ precatory rather than mandatory directions to the District; e.g., "the governing board ... may require such permits and impose such reasonable *421 conditions as are necessary." §§ 373.413(1), 373.416(1), 373.409(1) Fla. Stat. Further, section 373.413(1) and 373.416(1) both expressly exclude from coverage "the exemptions set forth in this part."
To implement the surface water management provisions, the District adopted rule 40D-4.051, Florida Administrative Code. That rule contains ten activities which the District exempted from the permitting requirements of Part IV of Chapter 373:
40D-4.051 Exemptions.
The following activities are exempt from permitting under this chapter:
(1) The activities specified in sections 373.406, and 403.812, Florida Statutes.
(2) The construction, alteration, or operation of surface water management systems which satisfy the following requirements:
(a) The total land area does not equal or exceed 10 acres;
(b) The area of impervious surface will not equal or exceed 2 acres;
(c) The activities will not be conducted in wetlands;
(d) The activities will not be conducted in existing lakes, streams, or other watercourses;
(e) The surface water management system will not utilize drainage pumps or operable discharge structures;
(f) The activities will not utilize storm drainage facilities larger than one 24-inch diameter pipe, or its hydraulic equivalent;
(g) Discharges from the site will meet applicable state water quality standards, as set forth in chapter 17-3 and rule 17-4.242;
(h) The surface water management system meets the requirements of chapter 17-25 "Regulation of Stormwater;"
(i) The activities can otherwise reasonably be expected not to have significant adverse water resource impacts; and
(j) The surface water management system can be effectively maintained.
(3) Any project, work or activity which has received all governmental approvals necessary to begin construction and is under construction prior to October 1, 1984.
(4) Any project, work or activity which received a surface water management permit from the District prior to October 1, 1984.
(5) Any project, work or activity which did not require a surface water management permit from the District and had received all other necessary governmental approvals to begin construction or operation prior to October 1, 1984.
(6) Any phased or long term buildout project, including a development of regional impact, planned unit development, development with a master plan or master site plan, or similar project, which has received local or regional approval prior to October 1, 1984, if:
(a) The approval process requires a specific site plan and provides for a master drainage plan approved prior to the issuance of a building permit, and
(b) The developer has notified the District of its intention to rely upon this exemption on or before April 1, 1985.
Projects exempt under this subsection shall continue to be subject to the District's surface water management rules in effect prior to October 1, 1984.
(7) Mining, mining related activities and mining reclamation, except for phosphate. Projects exempt under this subsection shall continue to be subject to the District's surface water management rules in effect prior to October 1, 1984.
(8) (a) All normal and necessary farming and forestry operations as are customary for the area, which can be conducted without the construction of a new surface water management system. Site preparation, clearing, fencing, contouring to prevent soil erosion, soil preparation, plowing, planting, harvesting; and the construction of access roads, and the placement of bridges and culverts to facilitate these operations do not constitute construction of a new surface water management system, provided such operations and facilities do not impede or divert the flow of surface waters entering or leaving the operation or intrude *422 into or otherwise substantially and adversely impact significant wetlands.
(b) The construction, operation and maintenance of a farming or forestry irrigation system, including headers, ditches, furrows and tailwater recovery ponds, which contain water only following a rainfall event or resulting from withdrawals or diversions from ground water or surface water by wells or pumps. Nevertheless, a Consumptive Use Permit may be required for such withdrawals or diversions.
(c) The maintenance of existing irrigation and drainage ditches, dikes and insect control structures, provided that no more dredging is to be performed than is necessary to restore the dike or irrigation or drainage ditch to its original design specifications.
(9) Phosphate mining and mining related surface water management systems are exempt from the requirements of this chapter, provided that all Conditions for Exemption in rule 40D-4.053(1) are met. However, nothing in this section is intended to exempt phosphate mining from the Department of Environmental Regulation's authority for permitting in dredge and fill jurisdictional areas.
(10) Phosphate mine reclamation and restoration conducted in accordance with Chapter 16C-16, F.A.C., the Mine Reclamation rules of the Florida Department of Natural Resources, is exempt from the requirements of this chapter provided that all Conditions for Exemption in rule 40D-4.053(2) are met.
The District promulgated the challenged rule pertaining to isolated wetlands in this case by making it an amendment or addition to Rule 40D-4.051, thereby incorporating these same exemptions for permitting for the isolated wetlands. It also added two other exemptions as part of the new rule:
4.2 Conceptual Approval  Applications which propose to impact isolated wetlands may be approved in concept with a Letter of Conceptual Approval issued prior to the effective date of this appendix (March 31, 1987) will be governed by permit conditions and the laws and rules in effect at the time of issuance.
4.3 Developments of Regional Impact  For projects where an application for developmental approval was filed under the Development of Regional Impact (DRI) process pursuant to section 380.06, Florida Statutes, prior to March 31, 1987, the developer may request that the project be reviewed under the Chapter 40D-4 wetland permitting criteria in effect prior to October 1, 1986. The ultimate approval of the request lies with the District and will be based on whether the DRI was designed in compliance with the wetlands criteria in effect prior to October 1, 1986. The developer has until July 1, 1987 to notify the District in writing of its intention to rely upon this provision.
Appellants argue that none of the exemptions to the isolated wetlands permitting criteria are valid or authorized by section 373.414.
The route by which these issues reach us necessarily limits our scope of review, and our ability to determine them. Gen. Teleph. Co. of Fla. v. Fla. Pub. Serv. Comm., 446 So.2d 1063 (Fla. 1984); Brewster Phosphates v. State Dept. of Environmental Regulation, 444 So.2d 483 (Fla. 1st DCA), rev. den., 450 So.2d 485 (Fla. 1984). Rule-making is a quasi-legislative function, as opposed to an adjudicative proceeding. In a case like this one involving the direct appeal from a newly adopted agency rule, there really is no competent and substantial evidence presented below for us to review, nor findings of fact determined by a board or hearing officer.[2] The validity of the exemptions from this rule must be sustained as long as we can find they are reasonably related to the purposes of the Isolated Wetlands Act, and are not arbitrary or capricious. Gen. Teleph Co., 446 So.2d at 1067; Polk v. School Board of *423 Polk County, 373 So.2d 960 (Fla. 2d DCA 1979).
However, rule-making powers of administrative agencies are necessarily limited to the parameters of the statute which confers on the agency its rule-making authority. 1 Fla.Jur.2d Administrative Law § 48 (1977). A rule cannot substantively modify or amend the empowering statute by adding additional requirements. See Campus Communications v. Department of Revenue, 473 So.2d 1290 (Fla. 1985); State Dept. Ins. v. Insurance Services Office, 434 So.2d 908 (Fla. 1st DCA 1983), rev. den., 444 So.2d 416 (Fla. 1984); State Department of Business Regulation v. Salvation Ltd., Inc., 452 So.2d 65 (Fla. 1st DCA 1984). Nor can the agency, without sufficient statutory criteria expressed in the statute, vary the impact of a statute by restricting or limiting its operation, through creating waivers or exemptions. 1 Am.Jur.2d Administrative Law § 124 at 932 (1977).
The isolated wetlands law, section 373.414, contains only one express exemption: wetlands within the jurisdiction of the DER for the purposes of regulation of dredging and filling. To the extent any of the twelve challenged exemptions are based on that statutory exemption, they could be found authorized and valid. However, none appear related to this provision in section 373.414.
The first exemption in Rule 40D-4.051(1) refers back to exemptions adopted as part of the surface water management provisions in section 373.406. It provides:
(1) Nothing herein, or in any rule, regulation, or order adopted pursuant hereto, shall be construed to affect the right of any natural person to capture, discharge, and use water for purposes permitted by law.
(2) Nothing herein, or in any rule, regulation, or order adopted pursuant hereto, shall be construed to affect the right of any person engaged in the occupation of agriculture, silviculture, floriculture, or horticulture to alter the topography of any tract of land for purposes consistent with the practice of such occupation. However, such alteration may not be for the sole or predominant purpose of impounding or obstructing surface waters.
(3) Nothing herein, or in any rule, regulation, or order adopted pursuant hereto, shall be construed to be applicable to construction, operation, or maintenance of any agricultural closed system. However, part II of this chapter shall be applicable as to the taking and discharging of water for filling, replenishing, and maintaining the water level in any such agricultural closed system. This subsection shall not be construed to eliminate the necessity to meet generally accepted engineering practices for construction, operation, and maintenance of dams, dikes, or levees.
It also refers to stormwater systems under the District's jurisdiction pursuant to section 403.812. They are exempt from permitting if they are required for the connection of stormwater management facilities to waters that are incidental to the construction of such facilities.
With regard to the exemptions in section 373.406, since they are part of Part IV of Chapter 373, it is logical to assume they were intended to apply to section 373.414, even though not expressly referenced in the isolated wetlands law. The Legislature must be presumed to know the context and content of related statutes and their provisions. See State v. Webb, 398 So.2d 820 (Fla. 1981); Duval County School Board v. State Dept. of Admin., 500 So.2d 158 (Fla. 1st DCA 1986); approved, 514 So.2d 1086 (Fla. 1987); Floyd v. Bentley, 496 So.2d 862 (Fla. 2d DCA 1986), rev. den., 504 So.2d 767 (Fla. 1987).
However, we can find no basis to support the exemption for the activities specified by section 403.812. That provision is not part of Chapter 373; and the language of the isolated wetlands statute (§ 373.414) does not give the District any discretion not to include all isolated wetlands in its rule, in contrast with the language in sections 373.416 and 373.413. Thus, the exemption based on section 403.812 exceeds the statutory source upon which it is based, and it does not appear to *424 be reasonably related to the purpose of the isolated wetlands statute. Therefore, this exemption is arbitrary and capricious and cannot withstand this challenge. See Department of Professional Regulation v. Soc. Professional Land Surveyor, 475 So.2d 939 (Fla. 1st DCA 1985).
With regard to the activities listed in subsection (2) of Rule 40D, none of those exemptions appear to be relevant to the isolated wetland statute. In fact, some of the exemptions (exemption for permit if the total land area does not equal or exceed ten acres) are contrary to the temporary size criteria provided for in the isolated wetlands statute as well as the threshold sizes in the newly adopted Rule (wetlands less than .5 acres are except, unless other criteria apply). Thus, the exemption in subsection (2) cannot be sustained.
With regard to subsections (3), (4), (5) and (6) of Rule 40D-4.051, these exemptions relate to grandfathering in projects underway in 1984 when the surface water legislation was passed. It does not appear that any of these provisions would apply to projects seeking permits in 1987. Statutes passed by the Legislature have prospective application only as to substantive rights. Fleeman v. Case, 342 So.2d 815 (Fla. 1976); McKibben v. Mallory, 293 So.2d 48 (Fla. 1974); Durring v. Reynolds, Smith & Hills, 471 So.2d 603 (Fla. 1st DCA 1985); Seitz v. Duval School Board, 366 So.2d 119 (Fla. 1st DCA), cert. den., 375 So.2d 911 (Fla. 1979).
The new exemptions appearing in the isolated wetlands rule (4.2 and 4.3), more specifically address the effective date of the new rule regulating isolated wetlands and any grandfathering problems. We think they make subsections (3), (4), (5) and (6) superfluous. We also think appellants have failed to show that 4.2 and 4.3 are unreasonable and arbitrary. Therefore, we hold them valid.
With regard to subsection (7) (mining, mining related activities, and mining reclamation), (9) (phosphate mining and mining related surface water management systems), and (10) (phosphate mine reclamation and restoration), we can find no basis for the exemptions of these activities from the isolated wetland rule. The primary legislative concern in passing section 373.414 appears to have been to preserve wildlife and fish in small isolated wetlands because they are unique as to both their ecosystems and species. Many wildlife species inhabitating isolated wetlands are becoming endangered and fall into areas of critical state concern.
Mining activities most certainly pose a threat to such wetlands. We must favor the statutory construction which protects isolated wetlands from mining activities rather than subjecting them to such operations. This liberal interpretation is mandated by the Legislature for the wetlands law.[3]
The only reason given by the District for these exemptions is that such activities are monitored and regulated by other state agencies  the DER and DNR. However, it is the District only that is charged with the responsibility for preserving Florida's isolated wetlands. The DER may not have jurisdiction over isolated wetlands where there is no exchange or flow of water to other state waters. See Department of Environmental Regulation v. Goldring, 477 So.2d 532 (Fla. 1985). The District cannot delegate its statutory duty to other state agencies. 1 Fla.Jur.2d Administrative Law § 52. See State ex rel. Wolyn v. Apalachicola Northern R. Co., 81 Fla. 394, 88 So. 310 (1921); Fla. Dry Cleaning & Laundry Board v. Economy Cash & Carry Cleaners, 143 Fla. 859, 197 So. 550 (1940). Thus, we conclude these mining and related activities exemptions are invalid.
The exemptions set out in subsection (8) of Rule 40D-4.051 relate to farming and forestry operations, building irrigation systems, drainage ditches, dikes, and dredging and recovery ponds. These activities clearly *425 may impact on isolated wetlands and the quality of their habitats. To the extent exemptions in subsection (8) enlarge upon the statutory exemptions in section 373.406, they are not reasonably related to the applicable law, and accordingly they are not valid. See Soc. Prof. Land Surv.
Accordingly, we quash the exemptions to the isolated wetlands rule specified in this opinion, and we uphold the ones approved. Because so many of the exemptions relied upon by the District have been found invalid, we remand this proceeding to the District for further consideration in accordance with this opinion.
DANIEL, J., concurs.
DAUKSCH, J., dissents without opinion.
NOTES
[1] This is a direct appeal from an agency's final action consisting of rule-making. See § 120.54 (the Administrative Procedure Act), Fla. Stat. (1987). We have jurisdiction. Fla.R.App.P. 9.030(b)(1)(C).
[2] Cf. Island Harbor Beach Club, Ltd. v. Dept. of Nat. Resources, 495 So.2d 209 (Fla. 1st DCA 1986), rev. den., 503 So.2d 327 (Fla. 1987); and Dept. of Prof. Reg. v. So. Prof. Land Sur., 475 So.2d 939 (Fla. 1st DCA 1985).
[3] § 373.6161; Department of Environmental Regulation v. Goldring, 477 So.2d 532, 534 (Fla. 1985).