SHIVERS, Chief Judge.
Appellant, Manasota-88, Inc., brings a direct appeal from the Department of Environmental Regulation’s (DER’s) adoption of an amendment to Rule 17-4.245(8)(b), F.A.C., raising two challenges to the amendment: (1) that DER exceeded its delegated legislative authority in adopting the amendment, and (2) that the amended rule is vague and standardless, vesting unbridled discretion in DER staff. For the reasons set out below, we remand to the agency for further proceedings.
In 1983, the Environmental Regulatory Commission (ERC) adopted a new rule dividing Florida’s groundwaters into two classes of nonpotable (G-III and G-IV) and two classes of potable (G-I and G-II) water. In addition to these four use classifications, the ERC adopted two “standards,” known as primary and secondary drinking water standards. Primary standards listed certain health-threatening contaminants and their maximum allowable levels per liter of water, while secondary standards listed other constituents, related primarily to color, odor, taste, and aesthetic factors, and their maximum allowable levels per liter.
When originally promulgated in 1980, the secondary standards were not applicable to groundwater, but only to tap water in “community water systems,” (not including private wells, restaurants, malls, or other public buildings). On January 1, 1983, the ERC began requiring some installations which discharged into Class G-II groundwater to meet secondary as well as primary standards. Existing installations were temporarily exempted from compliance with the secondary standards. In the meantime, however, they were required to install on-site quality monitoring wells in order to test for secondary standard parameters. DER was directed to evaluate the environmental, social, and economic costs and benefits associated with requiring existing installations to meet secondary standards and, if justified, to consider recommending changes and modifications of the secondary standards’ implementation to the ERC.
Accordingly, DER reviewed the groundwater monitoring data, conducted workshops, and prepared a comprehensive report in which it confirmed that there were large variations in secondary standards parameters in Florida’s groundwater. It also determined that the cost of requiring all existing installations to strictly comply with secondary standards would be extremely high for both the installations and for DER. DER thus recommended to ERC that existing installations be exempted from compliance with secondary standards except when determined that compliance would be necessary to protect a drinking water source and the benefits of compliance outweighed the cost.
On November 6, 1987, DER gave notice of a proposed amendment to Rule 17-4.245, F.A.C., which would implement this recommendation by exempting all existing dis-chargers from compliance with secondary standards unless DER determined that compliance was necessary to protect groundwater used or reasonably likely to be used as a potable water source. Rule 17-4.245(8)(a), F.A.C. Even where such determination was made, however, the proposed amendment provided that an existing discharger could avoid application of secondary standards by affirmatively demonstrating that the economic, social, and envi *897 ronmental costs of compliance outweighed the economic, social, and environmental benefits of compliance provided, however, that such demonstration would not allow an existing discharger to violate secondary standards at any private or public water supply well beyond the discharger’s property boundary. Rule 17-4.245(8)(b).
Prior to the Department’s adoption of the proposed rule, appellant Manasota-88, Inc. and several other environmental protection organizations filed and were granted party status in the rule-making proceedings. A public hearing was conducted on December 17, 1987, and the proposed amendment was adopted and filed with the Secretary of State on January 22, 1988. Appellant Ma-nasota-88 then filed the instant direct appeal from the Department’s adoption of the rule amendment.
It is well established that an adversely affected party may bring a direct appeal to this court from rule-making proceedings, and that the adoption of a rule constitutes final agency action. See Brewster Phosphates v. DER, 444 So.2d 483 (Fla. 1st DCA 1984), cert. denied, 450 So.2d 485 (1984); General Telephone Company of Florida v. Public Service Commission, 446 So.2d 1063 (Fla.1984); Booker Creek Preservation, Inc. v. Southwest Florida Water Management District, 534 So.2d 419 (Fla. 5th DCA 1988); Polk v. School Board of Polk County, 373 So.2d 960 (Fla. 2d DCA 1979); City of Key West v. Askew, 324 So.2d 655 (Fla. 1st DCA 1975); Florida Administration Commission v. District Court of Appeal, First District, 351 So.2d 712 (Fla.1977). Agency action becomes final in rule-making proceedings at the time the rule is adopted and filed with the Secretary of State. Florida Administration Commission, supra. An adversely affected party then has 30 days from the filing of the rule or amendment in which to seek judicial review.
It is also clear that the standard of review to be applied by the District Court in direct appeals from rule-making proceedings is different from the standard used in an appeal from a hearing officer’s determination arising out of a rule challenge proceeding pursuant to section 120.54(4) or 120.56, Florida Statutes. Because rule-making proceedings under section 120.-54(3)(a) are quasi-legislative rather than quasi-judicial, and because the records in such proceedings are compiled in informal, non-adjudicatory settings without findings of fact, the competent substantial evidence standard used in reviewing quasi-judicial proceedings is conceptually inapplicable. The supreme court therefore concluded in General Telephone Company of Florida v. Public Service Commission, supra, that the appellate court must sustain the validity of a rule adopted by an agency “as long as they are reasonably related to the purposes of the enabling legislation, and are not arbitrary or capricious,” a standard more limited and less stringent than the competent substantial evidence standard applicable to formal quasi-judicial proceedings.
In applying this standard to rule-making proceedings, the appellate court must consider whether the agency:
(1) has considered all relevant factors; (2) has given actual, good faith consideration to these factors; and (3) has used reason rather than whim to progress from consideration of these factors to its final decision.
Adam Smith Enterprises, Inc. v. State of Florida Department of Environmental Regulation, 553 So.2d 1260, 1273. Rather than the testimony and exhibits used in formal adjudicatory hearings, the “factors” used in the rule-making process consist of such things as “[the rulemaker’s] prior experience, expert advice, the developing technical literature, ongoing experiments, [and] seasoned predictions.” Adam Smith, supra, at 1273, fn. 19.
As was also explained in Adam Smith, application of the arbitrary and capricious standard of review by the appellate court is possible on the informal administrative record which comes to the court from an administrative rule-making proceeding. Unlike the record which comes to the appellate court from adjudicatory quasi-judicial proceedings, the record *898 on appeal from rule-making proceedings will typically consist of the following:
(1) the agency’s initial proposal, its tentative empirical findings, important advice received from experts, and the description of the critical experimental and methodological techniques on which the agency intends to rely; (2) the written or oral replies of interested parties to the agency’s proposals and to all the materials considered by the agency; and (3) the final rule accompanied by a statement both justifying the rule and explaining its normative and empirical predicates. See sections 120.54(3)(a), (6), and (ll)(a), Fla.Stat.; section 120.68(5)(b), Fla.Stat.
Id. at 1270. A proper record from rule-making proceedings should also include a statement of the relevant facts considered by the rulemaker, and should reveal “if and how the rulemaker considered each factor throughout the process of policy formation,” detailing for the reviewing court “the actual attention [the rulemaker] gave to the factors, and explaining] his final disposition with respect to each of them.” Id. 1273.
The record on appeal in the instant case consists of a transcript of the December 17, 1987 hearing, two technical reports submitted at the hearing, and a “certification package” filed with the Secretary of State on January 22, 1988. The certification package, in turn, contains one copy of the amended rule, a summary of the rule, a one paragraph summary of the December 17, 1987 hearing, and a one page statement entitled “Facts and Circumstances,” briefly setting out the history of the rule amendment and, again, a summary of the amended rule. Nowhere in the record, however, is there a “detailed written statement of the facts and circumstances justifying the rule,” as the adopting agency is required by section 120.54(ll)(b), Florida Statutes, to file with the Secretary of State. Nor does there appear in the record on appeal any revelation of the attention given to each factor by the rulemaker or any explanation of the final disposition with respect to each factor.
The failure of DER to adequately comply with the requirements of section 120.-54(ll)(b) as discussed above renders the rule filing with the Secretary of State legally insufficient. Therefore, pursuant to section 120.68(12)(d), we find it necessary to hold DER’s amendment to rule 17-4.-245(8)(b) as filed invalid and ineffective for failure to comply with section 120.54(ll)(b), and remand to DER with directions to fully comply with the requirements in that section and to develop a more detailed record in accordance with the opinion in Adam Smith, supra.
ZEHMER and BARFIELD, JJ., concur.