648 So.2d 210 (1994)
Robert DeMARIO and Robert A. DeMario, and Dorothy H. Wilken, As Clerk of the Circuit Court, Appellants,
v.
FRANKLIN MORTGAGE & INVESTMENT CO., INC., et al., Appellees.
No. 93-2678.
District Court of Appeal of Florida, Fourth District.
December 21, 1994.
Rehearing and Rehearing Denied February 6, 1995.
Craig P. Rogers, Plantation, and Edna L. Caruso of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, for appellants Robert DeMario and Robert A. DeMario.
*211 Leigh Shinohara, West Palm Beach, for appellant Dorothy H. Wilken.
Thomas DeCarlo of Thomas D. DeCarlo, P.A., West Palm Beach, for appellees.
Rehearing and Rehearing En Banc Denied February 6, 1995.
STEVENSON, Judge.
This is an appeal from a partial summary judgment in which the trial court awarded $125,000 in surplus funds from a tax deed sale to appellee, the last title holder of record. Appellants are lienholders as a result of an unsatisfied mortgage on the property and challenge the award of the excess proceeds to appellee. Because we find that the trial court erred in failing to recognize appellants' superior claim to the surplus funds, we reverse.
The salient facts are not in dispute. Appellant, Robert DeMario, sold a parcel of land on Worth Avenue in Palm Beach to Franklin DeMarco in December 1986, for $3,150,000. DeMarco paid $900,000 down and appellant took back a four year, $2,250,000 note, secured by a purchase money first mortgage on the property from DeMarco. Appellant, Robert DeMario, subsequently assigned 3.5% of the note and mortgage to his nephew, Robert A. DeMario, the second appellant. DeMarco failed to make the August 1990 interest payment and any payments due thereafter, thus defaulting on the payment of the note and mortgage. On December 15, 1990, the note became payable in full and appellants filed suit on December 20, 1990, to foreclose the mortgage.
On June 6, 1991, appellants and DeMarco entered into a settlement and escrow agreement whereby DeMarco was allowed a six-month extension to perform his obligations under the note and mortgage. Pursuant to the agreement, DeMarco was required to quit claim the property to an escrow agent. If DeMarco was unable to render payment to appellants by October 7, 1991, the escrow agent was to deliver the quitclaim deed to appellants. DeMarco, however, received extensions on the time of payment, first to October 11, 1991, and then to October 21, 1991. On the last day of the final extension, DeMarco transferred the property by quitclaim deed from himself to appellee, Franklin Mortgage and Investment Company, Inc., ("Franklin Investment"), an insolvent real estate investment company. DeMarco was the sole shareholder, and Franklin Investment paid no consideration for the property.
After the last day of the extension passed without payment, appellants proceeded with their foreclosure action which was set for hearing on December 19, 1991. The court granted summary judgment for appellants, but agreed to delay entering the judgment until January 6, 1992, upon representation from DeMarco's attorney that DeMarco had a buyer for the property. On January 6, 1992, Franklin Investment filed for bankruptcy in the United States Bankruptcy Court for the District of Columbia. At the January 6 hearing DeMarco's counsel advised the court of the bankruptcy proceeding, which resulted in the foreclosure action being stayed.
On July 28, 1992, the bankruptcy court dismissed Franklin Investment's petition and found that the petition constituted an abuse of process and was filed in bad faith as a delay tactic to frustrate the parties' settlement agreement and prevent foreclosure on the property. In its order, the bankruptcy court observed that the quit claim deed of the property from DeMarco to Franklin Mortgage "had the intended effect of thwarting the settlement agreement and rendering the escrowed deed ineffective because it now fell outside the property's chain of title." Subsequent to the bankruptcy dismissal, the stay was lifted in the foreclosure proceeding. However, before the foreclosure proceeding could be concluded, the property was sold at a tax sale. Neither DeMarco nor Franklin Investment paid taxes on the property from 1989 through 1991 and a total tax liability of $255,002.39 had accrued. The buyer at the tax sale purchased the property for $350,010. The successful bidder subsequently assigned his bid to appellant, Robert DeMario, and then quitclaimed his interest to DeMario, who became the fee simple owner of the property.
The amount bid at the sale exceeded that necessary to retire the outstanding tax certificates and governmental liens, leaving approximately $125,000 in the possession of the *212 Clerk of Court in the court registry. On September 17, 1992, the Clerk of Court issued a notarized written notice to all persons having an interest in the property according to the abstract of title. The notice requested that anyone claiming the funds must submit a notarized written claim within ninety days. On October 16, 1992, Kathy DeMario, the wife of Robert A. DeMario, the wife of Robert A. DeMario, submitted a written claim on behalf of appellants but was advised by the clerk's office that the unnotarized claim was insufficient. On December 15, 1992, DeMarco, as president of Franklin Investment, submitted a notarized statement of claim for the excess proceeds. On December 17, 1992, appellants' attorney filed a notarized claim on appellants' behalf. The ninety day deadline expired on December 16, 1992.
The issue for review is whether or not appellants' notarized written claim, filed ninety-one days after the date of the clerk's notice, must be recognized. If so, then appellant, as the holder of an unsatisfied mortgage, would be entitled to the proceeds instead of Franklin Investment, whose claim rests on its position as former titleholder. The procedures governing tax deed sales are set forth in Chapter 197, Florida Statutes (1993) and the Florida Administrative Code Rule 12D-13.065.

THE STATUTES
Section 197.582(2), Florida Statutes (1993), provides in pertinent part:
If the property is purchased for an amount in excess of the statutory bid of the certificateholder, the excess shall be paid over and distributed by the clerk... . If, after all liens of record of the governmental units upon the property are paid in full, there remains a balance of undistributed funds, the balance of the purchase price shall be retained by the clerk for the benefit of persons described in s. 197.522(1)(a), as their interests may appear. The clerk shall mail notices to such persons notifying them of the funds held for their benefit... . Excess proceeds shall be held and disbursed in the same manner as unclaimed redemption moneys in s. 197.473... .
Section 197.473, Florida Statutes (1993), provides:
(1) After money paid to the tax collector for the redemption of tax certificates has been held for 90 days, which money is payable to the holder of a redeemed tax certificate but for which no claim has been made, on the first day of the following quarter the tax collector shall remit such unclaimed moneys to the board of county commissioners, less the sum of $5 on each $100 or fraction thereof which shall be retained by the tax collector as service charges.
(2) Two years after the date the unclaimed redemption moneys were remitted to the board of county commissioners, all claims to such moneys are forever barred, and such moneys become the property of the county.
Sections 197.502(4) and 197.522(1)(a), Florida Statutes (1993), combine to require that the required notices be mailed to the following persons or entities:
1. Legal titleholders of record
2. Any mortgagee of the property
3. Any vendee of a recorded contract for deed
4. Any other lienholder who has applied to the tax collector to receive notice.

THE ADMINISTRATIVE RULE
Florida Administrative Code Rule 12D-13.065 was promulgated in June 1985 by the Department of Revenue and provides in pertinent part that if property is purchased at a tax deed sale in excess of the outstanding tax certificates and governmental liens:
(3) Any remaining funds held by the clerk shall be distributed to those persons described in Section 197.502(4), F.S., as their interests may appear. Therefore the distribution scheme must observe the priorities of recordation of the liens or interests in the public records of the County. The excess funds must be used to satisfy in full to the extent possible each senior mortgage or lien in the property before distribution of any funds to any junior mortgage or lien. Any valid lien in the property is entitled to payment before any payment is *213 made to the titleholder of record. If a judgment lien or mortgage lien is terminated by court decree or by operation of law (i.e., Ch. 95, F.S.), such lien is not a valid lien and is therefore not entitled to be satisfied.
(4) The clerk shall send notices to those persons listed in Section 197.502(4), F.S., advising them of the funds held for their benefit. The form of the notice shall be as follows:
NOTICE
CTF NO. ____ Description ____ Pursuant to Chapter 197, F.S., the above property was sold at public sale on ____. After payment of all funds due to government units has been made, a surplus of $ ____ will remain and be held by this office for a period of ninety (90) days from the date of this notice for the benefit of persons having interest in and to this property as described in Section 197.502(4), F.S., as their interests may appear.
Attached hereto is a copy of the abstract of this property received from the office of the tax collector reflecting all such persons as described in Section 197.502(4), F.S., having an interest in the subject property. These funds will be used to satisfy in full, to the extent possible, each senior mortgage or lien in the property before distribution of any funds to any junior mortgage or lien. In order to be considered for distribution of these funds, you must submit a notarized statement of claim to this office, detailing the particulars of your lien, and the amounts currently due, within 90 days of the date of this notice. (emphasis added) A copy of this notice must be attached to your statement of claim. After examination of the statements of claim filed, this office will notify you if you are entitled to any payment. Dated this ____ day of ____, 19__.
* * * * * *
(6) If no statements of claim are filed within 90 days from the date of this notice, the clerk shall remit the funds, to the board of county commissioners as provided in Section 197.473, F.S. If there are statements of claim filed, it is the clerk's duty to insure that the excess funds are paid according to priorities. If a particular lien appears to be entitled to priority, and that lienholder has not come forward and made a claim to the excess funds, payment cannot be made to other junior lienholders. In such a situation, there are conflicting claims to the funds and the clerk should initiate an interpleader action against the various lienholders and let the court determine the proper distribution. As with any interpleader action, the clerk can move the court for an award of reasonable fees and costs out of the interpleaded funds.
* * * * * *
(9) The subject of lien priorities is often a matter of complexity. If there are doubts as to the priorities, or as to the proper application of the statute in a particular situation, the clerk has standing to bring a proceeding for interpleader or declaratory judgment against the holders of the various liens and interests in the property.
We agree with appellants that the notarized statement of claim required by rule 12D-13.065(4) cannot be interpreted as imposing a ninety day claims bar for persons otherwise entitled to distribution of surplus tax proceeds. Rule 12D-13.065(3) requires that "any valid lien in the property is entitled to payment before any payment is made to the titleholder of record." (emphasis added) Section (6) of the rule provides that if a "particular lien appears to be entitled to priority and that lienholder has not come forward and made a claim to the excess funds, payment cannot be made to other junior lienholders ... and the clerk should initiate an interpleader action against the various lienholders and let the court determine the proper distribution." Clearly, the rule, read as a whole, does not require that the Clerk of Court pay the surplus to honor only those claims filed within ninety days from the date of the notice. Instead, the clear import of the rule is that the Clerk of Court is required to assemble all interested parties before the court so that the funds may be distributed according to the legal priorities of the claims. In this case, no interpleader action was necessary because *214 appellants had already appeared in the action by virtue of their claim filed ninety-one days after the clerk's notice was issued.
More importantly, however, rule 12D-13.065(4) cannot be read as establishing a ninety day claims bar for an even more fundamental reason. Sections 197.582 and 197.473, Florida Statutes, merely provide that the excess funds be held for ninety days and if no claims are made, the Clerk must turn the funds over to the board of county commissioners. The only statutory limit for making claim to the excess funds is the two-year bar found in section 197.582. An administrative agency may not enlarge, modify, or contravene the provisions of a statute. See Booker Creek Preservation, Inc. v. Southwest Florida Water Management Dist., 534 So.2d 419 (Fla. 5th DCA 1988); Campus Communications, Inc. v. Department of Revenue, 473 So.2d 1290 (Fla. 1985); Seitz v. Duval County Sch. Bd., 366 So.2d 119 (Fla. 1st DCA), cert. denied, 375 So.2d 911 (Fla. 1979); State v. Salvation Ltd., Inc., 452 So.2d 65 (Fla. 1st DCA 1984). When an administrative rule conflicts with a statute, the statute controls. Nicholas v. Wainwright, 152 So.2d 458 (Fla. 1963). Therefore, the ninety day requirement of rule 12D-13.065 must be read as directory only and not mandatory.
Accordingly, regardless of whether or not appellants filed a valid claim within the ninety day period, as superior lienholders, their claim must be recognized and they are entitled to the excess proceeds of the tax sale.
We reverse the final judgment and remand with directions that the excess funds be remitted to appellants.
FARMER, J., and OWEN, WILLIAM C., Jr., Senior Judge, concur.